JOSEPH A. BRODERICK, AS SUPERINTENDENT OF BANKS
OF THE STATE OF NEW YORK, PLAINTIFF, v. BEN-
JAMIN ABRAMS ET AL., DEFENDANTS.

Submitted January 20, 1934—Decided January 30, 1934.

Before Justice PARKER, at chambers.

For the plaintiff, *McDermott, Enright & Carpenter* (*Arthur Ofner,* of the New York bar, on the brief).

For the defendants, *Walter J. Bilder, Eichmann & Seiden, Howard Ewart, Gross & Gross, Harrison & Roche, Lichtenstein, Schwartz & Friedenberg.*

PARKER, J. One of the grounds originally urged was misjoinder of parties, the facts being that several hundred defendants have been joined in what is nominally one action, but several hundred actions combined for convenience, as stockholders of the defunct Bank of the United States, and are severally charged with individual liability to the extent of the par value of the shares held by them respectively.

I disposed of this objection in another case a few weeks ago. See *Beatty* v. *Lincoln Bus Co.,* 11 *N. J. Mis. R.* 938; 169 *Atl. Rep.* 286.

The other principal ground is that by the statute of 1897 (section 94b of the Corporation act as reprinted in Compiled Statutes), it is enacted that "no action or proceeding shall be maintained in any court of law of this state against any stockholder, * * * of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, * * * for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual—if such statutory personal liability be created by or arose from the statutes or laws of any other state or foreign country, and no pending or future action or proceeding to enforce any such statutory personal liability shall be maintained in any court of this state other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be parties." *Comp. Stat., p.* 1656.

The proposition advanced by the defendants is that this statute, which it is admitted was in existence in New Jersey before the organization of the Bank of the United States, bars any such action as the present one, which is by a *quasi*-receiver not appointed by any court but *ex officio* pursuant to statute, and for the benefit of all the creditors (and principally the depositors) of the defunct Bank of the United States.

One answer made to this by plaintiff is that the case is not within the language of the statute. Another answer made is that if it is within the language of the statute, there is an impairment of the obligation of a contract. A third answer made seems to be that to deny the right of action in this case would be in defiance of the full faith and credit clause of the United States constitution.

An abstract of the complaint is perhaps necessary. It is

in two counts but they are both alike, except that the second count merely charges certain "equitable" owners of shares with the alleged responsibility for one hundred per cent. assessment; whereas the first count relates to the "legal" owners who are in far greater number.

The averments are that plaintiff is and was on December 11th, 1930, the superintendent of banks of the State of New York; that the Bank of the United States is a corporation organized under the banking law of that state and doing business in the city of New York; that its capital amounted to $25,000,000, and the stock was owned by nearly twenty-one thousand stockholders all over the United States and in foreign countries; that on December 11th, 1930, by virtue of the Banking law and in view of the financial condition of the bank, the plaintiff as New York superintendent of banks took possession of its business and property and is engaged in liquidating the institution pursuant to section 57 of the New York Banking law of 1914. We need not go into details as to the ground assigned for his action as no question is now raised on that score.

Paragraphs 4 and 5 of the complaint go on to say that on May 6th, 1931, pursuant to section 72, plaintiff gave notice to the creditors to present their claims, which notices were mailed and advertised and that the time for presentation expired on June 29th, whereupon the plaintiff determined that the assessments were not sufficient to pay the creditors in full and that there was due by the bank to depositors and creditors a sum in excess of $30,000,000 over the reasonable value of assets, which deficiency still exists. That amount is in excess of the par value of all the stock.

Paragraph 6 of the complaint quotes the statute of New York which provides that "the stockholders of every corporation and joint-stock association for banking purposes, shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind."

Paragraph 7 quotes section 80 of the same Banking law to the effect that whenever a liability as above exists, and the

superintendent has taken possession and has notified creditors to present their claims, and the time to present claims has expired, and he has determined from his examination that the reasonable value of the assets is not sufficient to pay in full, he may enforce the individual liability of such stockholders in whole or in part. · Then follow a number of provisions about making demand on the stockholders, and what the demand shall contain, and how it shall be made, and what date shall be fixed, and "in case any such stockholder shall fail or neglect to pay such assessment within the time fixed in said notice, the superintendent shall have a cause of action, in his own name as superintendent of banks, against such stockholder either severally or jointly with other stockholders of such corporation, for the amount of such unpaid assessment or assessments, together with interest thereon from the date when such assessment was, by the terms of said notice, due and payable. In any such action, the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated."

The complaint further states that plaintiff decided that an assessment of $25 a share was required and necessary; and that on or about July 1st, 1932, he made demand on the various stockholders for the payment of $25 for each share of stock appearing upon the ledger to be held by such stockholder. Said demand stated the total amount assessed by plaintiff against all of the stockholders, the equal and *pro rata* share assessed against each stockholder for each share of stock held by him, and the total amount of the assessment for all shares held by each stockholder.

It then quotes section 120 of the Banking law which, so far as relevant, is to the effect that the individual liability of stockholders is to be governed exclusively by sections 120 and 80, and that the stockholders shall be individually re-

sponsible to the extent of their stock at par in addition to the amount invested by them, and that an action to enforce such liability must be brought within six years after the cause of action has accrued. The section then undertakes to define and describe who the stockholders are (we need not consider that now) and then provides as follows:

"In case the superintendent of banks shall have taken possession of the property and business of the bank pursuant to section fifty-seven of this chapter or a permanent receiver of such bank shall have been appointed, all actions or proceedings to enforce the liability of stockholders under this section shall be taken and prosecuted only in the name of the superintendent or the receiver, as the case may be, unless the superintendent or receiver shall refuse to take such action or proceeding upon proper request in writing made by any creditor, or shall have failed or neglected to commence such action or proceeding within sixty days after the receipt of such request, and in that event such action or proceeding may be taken by any creditor of the bank. But no such action shall be brought by a creditor until a judgment shall have been recovered by him against the bank and an execution thereon shall have been returned unsatisfied in whole or in part."

The final averment in the complaint is that each of the defendants named in schedule 2 annexed to the complaint appearing as stockholders on the books of the bank to the number of shares set opposite his name, has neglected and failed to pay the assessment so imposed.

The briefs submitted in this matter are very voluminous and have come from a number of different counsel, but I think they do not make any substantial points beyond those that have been mentioned above. The case is one of great importance, and I should like to devote much more time to it than is practicable in view of the pressure of other work; but, so far as I can see, the decision of these points seems reasonably plain.

It is to be observed that the present action is not one for the collection of unpaid subscriptions to stock, but for the collection of an assessment up to the original par value of

the stock. Consequently it differs from the recent case of *Graham* v. *Fleissner,* 107 *N. J. L.* 278, in which section 94b was considered and held inapplicable to a case in which the defendant stockholder had secured his stock as an original issue at some fraction of its par value and was held liable for the difference. It was objected in that case that section 94b was applicable, but the Court of Errors and Appeals expressly held (at *p.* 280) that the phrase "statutory personal liability" in the statute "means personal liability imposed by statute extra the common law liability to make up a deficit of par value, *i. e.,* the so-called 'trust fund' theory of capital stock," and the court held that even in the case of "trust fund" liability our courts would not cast up the assets and liabilities of a foreign corporation, but that that must be done at the domicile of said corporation or, as in the particular case, in bankruptcy.

As has been said, the present case is fundamentally different in that the attempt is to enforce by a suit at law against each individual stockholder a statutory personal liability of one hundred per cent. of his claim after an ascertainment of assets, not by any court of law or equity, but by a state official not endowed with any judicial power so far as appears. That official comes over into this state and endeavors by a suit at law (or rather several hundred suits at law) to recover the several amounts that he has himself assessed against the shareholders respectively. This seems to me to fly directly in the face of our statute. As banking commissioner who has taken possession and is administering the affairs of the defunct corporation as a *quasi* receiver, the plaintiff is avowedly acting in the interest of the creditors and for no other purpose. He is attempting to recover from the stockholders severally, in several hundred separate suits combined merely for convenience, the amount of their statutory liability up to the statutory limit, for the purpose of paying those creditors. Whether it is one creditor or two or three or a dozen or several thousand appears to me to make no difference in the situation. This suit is not one suit, but a multiple suit, at law, clearly on behalf of creditors of a corporation, and that a

foreign one, to enforce in each case a statutory personal liability of a stockholder. This is exactly what the statute forbids.

Secondly, that to refuse to entertain this action would be to impair the obligation of a contract.

What I understand to be the contract claimed to exist in this case is the contract between the State of New York and its own corporation and between that corporation and its stockholders which, of course, is dependent upon the New York statute. It seems to be a sufficient answer to say, as has already been said, that our statute was in force long before the Bank of the United States was organized and so far as relates to any rights attempted to be conferred by the New York statute in permitting recovery in other states, this state is in no way bound thereby and perhaps would not be bound even although the incorporation of this bank antedated our statute. However, it is unnecessary to go so far as this. I think the point regarding impairment of contract is without substance.

Finally, that to deny the right of this commissioner to sue at law in this state, as he is suing, is in defiance of the full faith and credit clause of the constitution.

Here again I think the point is without substance. It is true that it has been held in one or more cases in the Supreme Court of the United States, as for example in *Converse* v. *Hamilton*, 224 *U. S.* 243, that where an assessment of this kind has been definitely adjudicated by the courts of the home state and turned in effect into a judgment against the various parties concerned, that adjudication is enforceable in a sister state by virtue of the federal constitution although the laws of the latter state may be to the contrary. But here we have no court adjudication of any kind. The commissioner, pursuant to a statute, has taken charge and has determined as a commissioner that the United States Bank is insolvent and that the stockholders ought to be assessed to make up the deficit. That no doubt he can enforce in New York state under the statute of that state. But when he comes over here he is met by the express prohibition of our statute against

any suit at law and by the requirement that the suit shall be in the nature of an equitable accounting, to which all stockholders shall be parties. In the proceeding before me the suits are several, and only one defendant is a party in each, in theory of law.

As a matter of comity it is well known that state courts often lend their aid to the enforcement of rights which arise in other states; and in many cases they are bound to do so. But in a matter of this kind it was expressly laid down by the Supreme Court of the United States in *Finney* v. *Guy,* 189 *U. S.* 335, that "whether a state court should permit an action to be maintained therein on the principle of comity between the states is a question exclusively for the courts of that state to decide," to which it may here be added that the legislature in the present instance undertook to decide that question itself.

My conclusion is that the present complaint cannot be supported and must be struck out as stating causes of action which by statute are not maintainable at law in this state. Whether a judgment for the defendant should be directed thereon is a matter on which counsel are probably entitled to be heard.

As I view the matter now, it would seem that there should be a judgment for the moving defendants subject of course to appeal, and without prejudice to the filing of a bill in equity on the lines laid down in section 94b of the Corporation act. The matter might be transferred to the Court of Chancery, but the complaint would have to be reframed, I think, in any event.

I will hear counsel on the first convenient motion day as to settlement of these details.

(After hearing counsel February 10th, 1934, counsel for the plaintiff having stated that no application to amend the complaint was made or contemplated order was made that the complaint be struck out, and judgment final entered in favor of the several moving defendants.)