## BRODERICK, SUPERINTENDENT OF BANKS OF NEW YORK, *v.* ROSNER ET AL.

No. 528.   Argued February 15, 1935.—Decided April 1, 1935.

*Messrs. Carl J. Austrian* and *James D. Carpenter, Jr.,* with whom *Messrs. Arthur Ofner* and *Harold N. Cohen* were on the brief, for appellant.

*Mr. Walter J. Bilder,* with whom *Mr. Nathan Bilder* was on the brief, for Mary Rosner et al., appellees.

632

*Mr. David Friedenberg,* with whom *Messrs. Howard Ewart, Benjamin Gross,* and *James Mercer Davis* were on the brief, for Charles P. Anderson et al., appellees.

634

636

*Mr. J. H. Harrison* submitted for The Bobdon Co. et al., appellees.

By leave of Court, *Mr. John W. Bricker*, Attorney General of Ohio, and *Messrs. W. Dale Dunifon* and *J. Roth Crabbe* filed a brief on behalf of Mr. Samuel H. Squire, Superintendent of Banks of Ohio, as *amicus curiae*, supporting the contention of appellant that § 94b of the New Jersey Corporation Act is unconstitutional.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Pursuant to Article VIII, § 7, of the Constitution of New York, its Banking Law (Consolidated Laws, Chapter Two) provides, § 120:

" The stockholders of every bank will be individually responsible, equally and ratably and not one for another, for all contracts, debts and engagements of the bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

638

The Bank of the United States is a corporation organized under the Banking Law of New York and had its places of business in New York City. Its outstanding capital stock is $25,250,000 represented by 1,010,000 shares of $25 par value. On November 17, 1933, Joseph A. Broderick, as Superintendent of Banks of the State of New York, brought, in the Supreme Court of New Jersey, this action against 557 of its stockholders who are residents of New Jersey, to recover unpaid assessments levied by him upon them pursuant to law.

The defendant moved to strike out the complaint on the ground, among others, that, by reason of § 94 (b) of the Corporation Act of New Jersey (2 Comp. Stats. p. 1656), it failed to set out a cause of action enforceable in any court of that State. The section, first enacted March 30, 1897, provides:

" No action or proceeding shall be maintained in any court of law in. this state against any stockholder, officer or director of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, officer or director for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country, and no pending or future action or proceeding to enforce such statutory personal liability shall be maintained in any court of this state other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties."

Broderick seasonably claimed that to sustain the asserted bar of the statute would violate Article IV, § I, of the Federal Constitution which provides that: " Full

faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State"; and the legislation of Congress enacted pursuant thereto. The trial court sustained the motion to strike out the complaint, *Broderick* v. *Abrams,* 112 N. J. L. 309; 170 Atl. 214, on the ground that the statute of the State constituted a bar to the action. Judgment against the plaintiff with costs, was entered in favor of each of the defendants, and the judgment was affirmed by the Court of Errors and Appeals " for the reasons expressed in the opinion " of the trial court, 113 N. J. L. 305; 174 Atl. 507. An appeal to this Court was allowed.

*First.* The conditions imposed by § 94 (b) of the New Jersey statute upon the bringing of suits to enforce such assessments, as here applied, deny to the Superintendent the right to resort to the courts of the State to enforce the assessment of liability upon the stockholders there resident. The requirement that the proceeding be by bill in equity, instead of by an action at law, would, if standing alone, be no obstacle. But by withholding jurisdiction unless the proceeding be a suit for an equitable accounting to which the " corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties," it imposes a condition which, as here applied, is legally impossible of fulfillment. For it is not denied that according to the decisions of the New Jersey courts " necessary parties " means those whose presence in a suit is essential as a jurisdictional prerequisite to the entry of judgment, so that no decree can be made respecting the subject matter of litigation until they are before the court, *Wilkinson* v. *Dodd,* 40 N. J. Eq. 123, 130; 3 Atl. 360; *In re Martin,* 86 N. J. Eq. 265; 98 Atl. 510; *McBride* v. *Garland,* 89 N. J. Eq. 314; 104 Atl. 435; and that to secure jurisdiction personally over those who are not residents of New Jersey, or engaged in business there, is impossible. *Pen-*

*noyer* v. *Neff,* 95 U. S. 714; *Wilson* v. *American Palace Car Co.,* 65 N. J. Eq. 730; 55 Atl. 997; *Papp* v. *Metropolitan Life Ins. Co.,* 113 N. J. Eq. 522, 530; 167 Atl. 873. The corporation has no place of business in New Jersey; only a few of the many stockholders and creditors have either residence or place of business there.

Moreover, even if it were legally possible to satisfy the statutory condition by making substituted service by publication upon non-resident stockholders and creditors, compare *Kirkpatrick* v. *Post,* 53 N. J. Eq. 591, 594; 32 Atl. 267; 53 N. J. Eq. at 641; 33 Atl. 1059, the cost would be prohibitive. The number of the stockholders is 20,-843; the number of depositors and other creditors exceeds 400,000; and the amounts assessed against the individual defendants are relatively small—against some only $50. The aggregate of sheriff's fees alone as to the non-resident defendants, aside from expenses of publication and mailing, would exceed the aggregate amount due from the New Jersey stockholders.[1] The suggestion, in the opinion of the Supreme Court, that leave might be granted to file a bill in equity is, therefore, without legal significance.

*Second.* But for the statute, the action would have been entertained. Compare *Young* v. *Masci,* 289 U. S.

---

[1] It is stated by counsel, without contradiction, that, under the New Jersey practice, before substituted service can ever be made, the sheriff must have made as to each non-resident defendant a return *non est inventus.* New Jersey Public Laws, 1922, c. 88, entitles the sheriff to a fee of $1.50 for making an affidavit of non-residence as to each defendant. After such affidavit the plaintiff, it is said, would be required to make applications for leave to effect substituted service on each of the absent defendants and to present the essential facts showing the necessity therefor, setting forth the residence and place of business of each. Besides notice sent to each, it would be necessary to publish the notice once a week during four consecutive weeks in some newspaper. N. J. P. L. 1912, c. 155, § 13; N. J. Chancery Rules, 36-38. It is estimated that the 420,000 names of non-resident defendants would fill at least 80 newspaper pages of 8 columns each.

253. New Jersey has provided courts with jurisdiction of suits of like nature and procedure otherwise appropriate for their determination. *McDermott* v. *Woodhouse*, 87 N. J. Eq. 615, 620; 101 Atl. 375; *Graham* v. *Fleissner*, 107 N. J. L. 278; 153 Atl. 526; *Western Nat. Bank* v. *Reckless*, 96 Fed. 70. Compare *Cochrane* v. *Morris*, 10 N. J. Misc. 82; 157 Atl. 652. The plaintiff is not, as in *Booth* v. *Clark*, 17 How. 322, a foreign receiver. He sues as an independent executive in whom has been vested by statute the cause of action sued on, *Converse* v. *Hamilton*, 224 U. S. 243, 257. The complaint is in conformity to the state practice, see 112 N. J. L. 309, 310; 170 Atl. 214; *Beatty* v. *Lincoln Bus Co.*, 11 N. J. Misc. 938; 169 Atl. 286; and it sets forth the facts essential to a recovery against the stockholder under the law of New York. It shows that the requirements of a valid assessment and of the right to enforce the same by action at law have been complied with, alleging, among other things: that, on December 11, 1930, Broderick, pursuant to § 57 of the New York Banking Law, took possession of the Bank's business and property; that since May 6, 1931, he has been engaged in liquidating the same; that prior to July 1, 1932, he determined, pursuant to §§ 80 and 120, that the reasonable value of the assets of the Bank was not sufficient to pay the creditors in full and that there was due them $30,000,000 in excess of such reasonable value; that the deficiency then fixed and determined has continued ever since; that upon the Superintendent of Banks is imposed the duty of making assessment upon the stockholders and enforcing the liability of stockholders for the benefit of the creditors and that actions to enforce the liability are to be brought in the name of the Superintendent;[2] that

---

[2] Section 80 of the New York Banking Law provides: " In case any such stockholder shall fail or neglect to pay such assessment within the time fixed in said notice, the superintendent shall have a cause of action, in his own name as superintendent of banks, against

prior to July 1, 1932, he determined that an assessment of $25 against each stockholder for each share of stock held by him was required for the payment of the Bank's indebtedness; that he duly made upon each stockholder a demand for the payment thereof on August 8, 1932; and that among the stockholders upon whom such demand was made and who failed to pay are the several defendants.

*Third.* The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard therein is subject to the limitations imposed by the Federal Constitution. *McKnett* v. *St. Louis & San Francisco Ry.*, 292 U. S. 230, 233. A " State cannot escape its constitutional obligations [under the full faith and credit clause] by the simple device of denying jurisdiction in such cases to courts otherwise competent." *Kenney* v. *Supreme Lodge,* 252 U. S. 411, 415.[3] It is true that a State can legislate only with reference to its own jurisdiction, *Bonaparte* v. *Tax Court,* 104 U. S. 592; *Olmsted* v. *Olmsted,* 216 U. S. 386; and that the full faith and credit clause does not require the enforcement of every right which has ripened into a judgment of another State or has been conferred by its statutes. See *Bradford Electric Light Co.* v. *Clapper,* 286 U. S. 145, 160; *Alaska Packers Assn.* v. *Industrial Accident Comm'n, ante,* p. 532, at p. 546. But the room left for the play of conflicting policies is a narrow one. One State need not enforce the penal laws of another. *Huntington* v. *Attrill,* 146 U. S. 657. A State may

---

such stockholder either severally or jointly with other stockholders of such corporation, for the amount of such unpaid assessment or assessments, together with interest thereon from the date when such assessment was, by the terms of said notice, due and payable."

[3] *Chambers* v. *Baltimore & Ohio R. Co.*, 207 U. S. 142, is not to the contrary; there no claim was made under the full faith and credit clause.

adopt such system of courts and form of remedy as it sees fit. It may in appropriate cases apply the doctrine of *forum non conveniens. Anglo-American Provision Co.* v. *Davis Provision Co., No. 1,* 191 U. S. 373. But it may not, under the guise of merely affecting the remedy, deny the enforcement of claims otherwise within the protection of the full faith and credit clause, when its courts have general jurisdiction of the subject matter and the parties. *Christmas* v. *Russell,* 5 Wall. 290, 300. Compare *Atchison, T. & S. F. Ry.* v. *Sowers,* 213 U. S. 55; *Tennessee Coal, Iron & Railroad Co.* v. *George,* 233 U. S. 354. For the States of the Union, the constitutional limitation imposed by the full faith and credit clause abolished, in large measure, the general principle of international law by which local policy is permitted to dominate rules of comity.

Here the nature of the cause of action brings it within the scope of the full faith and credit clause. The statutory liability sought to be enforced is contractual in character. The assessment is an incident of the incorporation. Thus the subject matter is peculiarly within the regulatory power of New York, as the State of incorporation. "So much so," as was said in *Converse* v. *Hamilton,* 224 U. S. 243, 260, " that no other State properly can be said to have any public policy thereon. And what the law of Wisconsin [New Jersey] may be respecting the relative rights and obligations of creditors and stockholders of corporations of its creation, and the mode and means of enforcing them, is apart from the question under consideration." Compare *Bernheimer* v. *Converse,* 206 U. S. 516, 532. In respect to the determination of liability for an assessment, the New Jersey stockholders submitted themselves to the jurisdiction of New York. For " the act of becoming a member [of a corporation] is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicil, mem-

bership looks to and must be governed by the law of the State granting the incorporation." *Modern Woodmen of America* v. *Mixer,* 267 U. S. 544, 551. Compare *Royal Arcanum* v. *Green,* 237 U. S. 531; *Hancock National Bank* v. *Farnum,* 176 U. S. 640; *McDermott* v. *Woodhouse,* 87 N. J. Eq. 615, 618, 619; 101 Atl. 375.[4] Obviously, recognition could not be accorded to a local policy of New Jersey, if there really were one, of enabling all residents of the State to escape from the performance of a voluntarily assumed statutory obligation, consistent with morality, to contribute to the payment of the depositors of a bank of another State of which they were stockholders.

*Fourth.* The fact that the assessment here in question was made under statutory direction by an administrative officer does not preclude the application of the full faith and credit clause. If the assessment had been made in a liquidation proceeding conducted by a court, New Jersey would have been obliged to enforce it, although the stockholders sued had not been made parties to the proceedings, and, being nonresidents, could not have been personally served with process. *Converse* v. *Hamilton,* 224 U. S. 243, 252, 260. The reason why in that case the full faith and credit clause was held to require Wisconsin courts to enforce the assessment made in Minnesota was not because the determination was embodied in a judgment. Against the nonresident stockholders there had been no judgment in Minnesota. Wisconsin was required to enforce the Minnesota assessment because statutes are " public acts " within the meaning of the clause, *Bradford Electric Light Co.* v. *Clapper,* 286 U. S. 145, 155; *Alaska Packers Assn.* v. *Industrial Accident Comm'n, ante,* p. 544;

---

[4] See, too, *Canada Southern Ry.* v. *Gebhard,* 109 U. S. 527, 537–8; *Hawkins* v. *Glenn,* 131 U. S. 319, 329; *Nashua Savings Bank* v. *Anglo-American Co.,* 189 U. S. 221, 229–230; *Harrigan* v. *Bergdoll,* 270 U. S. 560, 564.

and because the residents of Wisconsin had, by becoming stockholders of a Minnesota corporation, submitted themselves to that extent, to the jurisdiction and laws of the latter State. Where a State has had jurisdiction of the subject matter and the parties, obligations validly imposed upon them by statute must, within the limitations above stated, be given full faith and credit by all the other States.

The Superintendent is an independent executive on whom the legislature has conferred large responsibilities, compare *Isaac* v. *Marcus,* 258 N. Y. 257, 263–5; 179 N. E. 487; *Matter of Broderick,* 235 App. Div. 281; 257 N. Y. S. 382; among them, the determination of the questions involved in stockholders' liability. He must decide whether there is a deficiency of assets which requires resort to that liability; and if so, what proportion of the full liability it is necessary to enforce; and when the assessments shall be paid. It is urged that unlike the assessment involved in *Converse* v. *Hamilton, supra,* that laid by the New York Superintendent is not conclusive as to its propriety and amount. The contention rests primarily upon a misconception of a provision in § 80 of the Banking Law, to the effect that " the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated." This provision does not declare, as a rule of substantive law, that the determination is open to attack in an action to enforce the stockholders' liability. It merely provides, as in the case of other official acts, a method of proof without the calling of witnesses. Thus it prescribes a rule of evidence; and may possibly affect

the manner of pleading.[5] But with such matters we have here no concern. It is enough, for present purposes, that a complaint alleging the stock ownership of the defendants, the assessment, the demand, and failure to pay, together with the determination of the value of assets and liabilities, referred to in § 80, sets forth a good cause of action.[6] *Broderick* v. *Aaron*, 147 Misc. 854; 264 N. Y. S. 15; *Broderick* v. *Betco Corp.*, 149 Misc. 245; 267 N. Y. S. 139; *Broderick* v. *American General Corp.*, 71 F. (2d) 864; compare *Broderick* v. *Stephano*, 314 Pa. 408; 171 Atl. 582; *Broderick* v. *McGuire*, 119 Conn. 83; 174 Atl. 314. Even if the administrative determination of the assessment made in New York is subject to attack in a suit brought there or in any other State, that fact would not justify New Jersey in denying to the Superintendent the right to bring this suit.

*Fifth.* The Superintendent contends that his assessment is a " public act " within the meaning of the full faith and credit clause, and is entitled to receive in every other State of the Union, the same recognition accorded to it by the laws of New York. He insists that, while under the law of New York defenses personal to individual stockholders are open to them whenever and whereever sued, *Selig* v. *Hamilton*, 234 U. S. 652, 662–3, his determinations as to the propriety and amount of the assessment, in so far as they involve merely the exercise of judgment, are conclusive; and are not subject to review by any court, except on grounds for which equity com-

---

[5] Compare *Broderick* v. *McGuire*, 119 Conn. 83, 101–103; 174 Atl. 314.

[6] Before the adoption of § 80 by the Laws of 1914, c. 369, the Superintendent was required to allege and prove the facts necessitating the assessment. *Cheney* v. *Scharmann*, 145 App. Div. 456; 129 N. Y. S. 993; see *Matter of Empire City Bank*, 18 N. Y. 199, 211–213. By the Laws of 1934, c. 494, further changes, of no importance here, have been made in this section.

monly affords relief against administrative orders. He argues that his powers and duties in respect to the assessment of stockholders, and the proceeding to enforce liability therefor, are substantially the same as those imposed by the National Banking Act on the Comptroller of the Currency, *Van Tuyl* v. *Scharmann,* 208 N. Y. 53, 63; 101 N. E. 881; *Matter of Union Bank of Brooklyn,* 176 App. Div. 477, 485; 163 N. Y. S. 485; *Broderick* v. *Aaron,* 151 Misc. 516, 523; 272 N. Y. S. 219; and that, as to these, it has been settled by an unbroken line of authorities beginning with *Kennedy* v. *Gibson,* 8 Wall. 498, 505, that the Comptroller's determination is conclusive in an action at law to enforce the stockholders' liability; being subject, like other administrative orders, only to a direct attack for fraud or error of law by appropriate proceedings in equity.[7] *United States* v. *Knox,* 102 U. S. 422, 425. Whether this contention is sound, we have no occasion to consider now. See *Broderick* v. *Adamson,* 148 Misc. 353, 369–371; 265 N. Y. S. 804. It is sufficient to decide that, since the New Jersey courts possess general jurisdiction of the subject matter and the parties, and the subject matter is not one as to which the alleged public policy of New Jersey could be controlling, the full faith and credit clause requires that this suit be entertained.

*Reversed.*

MR. JUSTICE CARDOZO is of the opinion that the judgment should be affirmed.

---

[7] *Casey* v. *Galli,* 94 U. S. 673, 681; *National Bank* v. *Case,* 99 U. S. 628, 634–5; *DeWeese* v. *Smith,* 106 Fed. 438, 445, aff'd, 187 U. S. 637; *Murray* v. *Sill,* 7 F. (2d) 589; *Crawford* v. *Gamble,* 57 F. (2d) 15; *B. V. Emery & Co.* v. *Wilkinson,* 72 F. (2d) 10; see *Studebaker* v. *Perry,* 184 U. S. 258, 266; *Rankin* v. *Barton,* 199 U. S. 228, 232. Compare *Bushnell* v. *Leland,* 164 U. S. 684; *Korbly* v. *Springfield Savings Institution,* 245 U. S. 330; *Aldrich* v. *Campbell,* 97 Fed. 663.