JOSEPH A. BRODERICK, Superintendent of Banks of the State of New York *vs.* CHARLES R. COLE.

JULY 3, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This is an action in assumpsit, brought by the plaintiff as superintendent of banks of the state of New York, against the defendant, who is a stockholder in The Bank of United States, a New York banking corporation. It is brought to recover on a liability, alleged to be contractual, imposed on stockholders of banking corporations of that state by certain provisions of its constitution and statutes, which are set forth in the declaration. The defend-

ant demurred to the declaration on sixteen grounds, and the case is now before us on the plaintiff's exception to the decision of the superior court sustaining the demurrer.

The principal facts which are set forth in the declaration, and which, for the purposes of the decision on the demurrer, are admitted to be true, are as follows: The constitution of New York, as it was when the defendant, by purchase, became the owner of his present fifty shares of stock in the bank, and as it still is, contains this provision: "Liability Of Bank Stockholders: The stockholder of every corporation and joint stock association for banking purposes shall be individually responsible to the amount of their respective share or shares of stock in any such corporation or association, for all its debts and liabilities of every kind."

The statutes of New York then contained certain provisions, which are still in effect, defining the rights, powers and duties of the superintendent of banks, and governing the duties and obligations of owners and holders of stock in New York banking corporations. The defendant is a stockholder within the meaning of that term as defined and used in these provisions. Among them is this provision: "The stockholders of every bank shall be individually responsible, equally and ratably and not one for another for all contracts, debts and engagements of the bank, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Section 57 of these provisions tells when the superintendent of banks may take possession of the business and property of any bank; and section 120 provides that in case he shall have taken possession of the property and business of such bank pursuant to section 57, all actions or proceedings to enforce the liability of its stockholders shall be taken and prosecuted only in the name of the superintendent. Section 72 provides that when he shall have thus taken possession of a bank and determined to liquidate its affairs, he shall notify, in a certain manner, all persons,

having claims, to present and prove them within a certain time.

Section 80 first provides as follows:

"Whenever a liability of stockholders for the amount of their respective shares of any such corporation exists, and the superintendent has duly taken possession of the property and business of such corporation, and has duly notified creditors to present and make proof of their respective claims and the last day to present such claims has expired, and he has determined from his examination of its affairs that the reasonable value of the assets of such corporation is not sufficient to pay its creditors in full, he may enforce the individual liability of such stockholders in whole or in part."

It then provides that in case he determines to enforce such liability, he shall make demand in writing upon such stockholders by mail. The remainder of the section is as follows:

"Such demand shall state the total amount assessed by the superintendent against the stockholders and the equal and pro rata share assessed against each stockholder for each share of stock, and the total amount of such assessment for all the shares of stock of such stockholder. Such demand shall also fix a date, not earlier than thirty days from the date of such notice, upon which such stockholders shall be required to pay such assessment to the superintendent. In case any such stockholder shall fail or neglect to pay such assessment within the time fixed in said notice, the superintendent shall have a cause of action, in his own name as superintendent of banks, against such stockholder either severally or jointly with other stockholders of such corporation, for the amount of such unpaid assessment or assessments, together with interest

> thereon from the date when such assessment was, by the terms of said notice, due and payable. In any such action, the written statement of the superintendent, under his hand and seal of office, reciting his determination to enforce the individual liability, or any part thereof, of such stockholders, and setting forth the value of the assets of such corporation and the liabilities thereof, as determined by him after examination and investigation, shall be presumptive evidence of such facts as therein stated."

One of the statutory grounds on which the plaintiff, as superintendent of banks, was authorized to take possession of the business and property of the bank existed. He therefore took such possession in accordance with the statute and is now liquidating its affairs. After he had given notice to its creditors in accordance with the statute, and the time for filing the claims of its creditors had expired, he ascertained and determined, from an examination of its affairs, that the reasonable value of its assets was not sufficient to pay its creditors and that there was due and owing by the bank to its creditors, over and above the reasonable value of its assets, a sum in excess of $30,000,000.

Subsequently to such determination he decided that an assessment of $25 against each stockholder for each share of stock held by him was necessary to provide money toward the payment of the sums due to the creditors. In accordance with the statute he then made demand in writing upon all the stockholders, including the defendant, for the payment on August 8, 1932, of $25 for each share of stock held by such stockholders, such demand stating the total amount assessed against all the stockholders, the equal and pro rata share assessed against each stockholder for each share of stock held by him and the total amount of the assessment against each stockholder for all shares held by each one.

Although such demand was duly made on the defendant for payment of the assessment against him, he neglected and refused and still refuses to pay such assessment. The plaintiff issued a written statement under his hand and seal of office reciting his determination to enforce the individual liability of such stockholders and setting forth the value of the assets of the bank as determined by him after examination and investigation. A copy of this statement is annexed to the declaration and shows the total assets of the bank, classified in appropriate classes, as $41,774,017.11, and the total of its liabilities, classified in appropriate classes, as $75,896,549.60 and a deficit of $34,122,532.60, plus accrued interest upon liabilities. On December 11, 1930, when the plaintiff took possession of the business and property of the bank, its capital stock amounted to $25,250,000, represented by 1,110,000 shares of the par value of $25 each, all of which was then and still is outstanding, and of which the defendant then held and still holds fifty shares.

All these facts are alleged in the declaration and therefore are, as above stated, admitted by the demurrer to be true, for the purposes of the case as now before us for decision. But besides these facts, there is also alleged in the declaration, and similarly admitted by the demurrer to be true, the following very important fact, "that such insufficiency of assets as was ascertained and determined existed at that time and has since continued to exist."

Th defendant in his brief says: "It being clear that the evidence of the deficiency is an essential element of the defendant's (apparently meaning the plaintiff's) case, it ought to be alleged as a fact." He cites *Broderick* v. *McGuire*, 119 Conn. 83, 174 A. 314, which supports that general statement. He then adds: "The declaration in the present case contains no such allegation." It is clear to us, however, from the language above quoted, especially when read in the light of the context, that that language is a direct allegation of the existence and continuance of the

"insufficiency of assets" as a *fact*, and not of the ascertainment and determination by the superintendent that there was such insufficiency.

This allegation eliminates any need or good reason for deciding at this time the question whether the ascertainment and determination, by the plaintiff as superintendent of banks, that the reasonable value of the assets of the bank was not sufficient to pay its creditors in full and that there was due and owing by such bank to its creditors over and above the reasonable value of such assets a sum in excess of $30,000,000, are conclusive in this case, under the "full faith and credit" clause of the constitution of the United States. Nor is there before us at this time for decision any question as to whether, under the last sentence above quoted from section 80 of the New York banking law, the written statement of the superintendent, under his hand and seal of office, setting forth the value of the assets of the bank and the liabilities thereof, as determined by him after examination and investigation, will in this case "be presumptive evidence of such facts as therein stated." These two questions may come before us for decision later on, but at present they are *coram non judice*.

The plaintiff in his declaration, after alleging the purchase by the defendant of his present holdings of shares of stock in the bank, and quoting the above provision of the New York constitution, and setting forth the provisions of the New York banking law, as quoted or summarized *supra*, alleges, evidently as legal conclusions, that the defendant, by purchasing and acquiring stock of the bank and becoming a stockholder therein, purchased such stock subject to all these provisions and became subject to all the duties and liabilities set out in these provisions; that these provisions became part of his contract of purchase; and that he thus "contracted, agreed and promised for a valuable consideration that he would be and remain individually liable and responsible for the liabilities of said bank as in said laws set forth to the extent of the amount of his stock therein and

the par value thereof," *i. e.*, $1,250 in addition to the amount invested in his shares.

At the very end of the declaration the plaintiff alleges "that by virtue of the foregoing the plaintiff claims an assessment of twenty-five dollars ($25) against the defendant for each share of stock held by him as aforesaid, being a total assessment of Twelve Hundred Fifty dollars ($1,250) with interest thereon from the 8th day of August, A. D. 1932, which sum with interest as aforesaid the defendant though he has promised, contracted and agreed to pay the same as aforesaid, refuses and neglects to pay, though often requested as aforesaid, to the damage of the plaintiff . . ."

The first five causes of demurrer set forth by the defendant are based on substantially the same contention, viz., that if any liability on the part of the defendant is shown by the allegation of the declaration, it is not contractual in its nature, and that therefore the present action of assumpsit cannot be maintained. This contention seems to have been abandoned by the defendant in his brief and oral argument · before us, probably because it has been conclusively refuted by a decision and opinion of the supreme court of the United States, handed down on April 1, 1935, between the date of the decision of the superior court in the instant case and the date of the hearing before us on the plaintiff's exception to that decision. *Broderick* v. *Rosner*, 294 U. S. 629. That was an action at law, similar to the one now before us, and was brought by the same plaintiff, in the same official capacity, against stockholders of the same bank to enforce their liability to pay assessments made by him under the same constitutional and statutory provisions of the state of New York.

The court sustained the plaintiff's right under the constitution of the United States to prosecute that action, notwithstanding a statute of the state of New Jersey prohibiting such an action in that state; and on this point it said: "Here the nature of the cause of action brings it within the scope of the full faith and credit clause. The

statutory liability sought to be enforced is contractual in character. The assessment is an incident of the incorporation. Thus the subject matter is peculiarly within the regulatory power of New York, as the State of incorporation. 'So much so,' as was said in *Converse* v. *Hamilton*, 224 U. S. 243, 260, 'that no other State properly can be said to have any public policy thereon. And what the law of Wisconsin (New Jersey) may be respecting the relative rights and obligations of creditors and stockholders of corporations of its creation, and the mode and means of enforcing them, is apart from the question under consideration.' Compare *Bernheimer* v. *Converse*, 206 U. S. 516, 532. In respect to the determination of liability for an assessment, the New Jersey stockholders submitted themselves to the jurisdiction of New York. For 'the act of becoming a member (of a corporation) is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicil, membership looks to and must be governed by the law of the State granting the incorporation.' *Modern Woodmen of America* v. *Mixer*, 267 U. S. 544, 551.''

Moreover, it is clear that under the constitution and statutes of New York and the facts alleged in the declaration the defendant became indebted to the plaintiff for a share of the deficiency in the assets of the bank; and it is settled in Rhode Island that a creditor may proceed against his debtor in an action of either debt or assumpsit.

It is obvious that no contention can be sustained in the instant case that, if any liability on the part of the defendant is shown by the allegations of the declaration, it is not contractual in its nature.

The defendant has contended before us that the proceeding should be in equity. No such contention is suggested in the reasons of demurrer, and in our judgment it is without merit in this case. The cases cited by the defendant in support of it are not in point, as they apply solely to the necessity of equitable proceedings in the state of incorpora-

tion under statutes radically different from the statutes of New York involved in the instant case. It also is clear from the decision and opinion of the supreme court of the United States in *Broderick* v. *Rosner, supra,* and from the opinions in several cases in the courts of other states brought by the same plaintiff to collect assessments from other stockholders of the Bank of United States, that an action at law is a proper form of remedy, at least in the absence of a state statute providing for an exclusive and substantially equivalent remedy in equity. The defendant admits in his brief that it has been held in New York that the statute which is the basis of the instant case will permit an action at law there.

The defendant's causes of demurrer numbered 6 and 7 are based on the contention that the contract or agreement by the defendant alleged in the declaration and the provisions of the law of New York upon which this action is based are contrary to the laws of Rhode Island and its public policy and are therefore unenforceable in its courts. No such contrary laws in this state have been called to our attention and we are aware of none. The contention is refuted by the language above quoted from the opinion of the supreme court of the United States in *Broderick* v. *Rosner, supra,* and seems to have been abandoned by the defendant in the instant case.

The defendant's causes of demurrer numbered 8, 9 and 10 are based on the contention that it does not appear from the declaration that there has been any judicial determination of the fact that the assets of the bank are insufficient to pay its creditors in full, or of the amount of such deficiency, or of the pro rata share of the defendant of any such deficiency. But we have already called attention to the fact that such deficiency and the amount thereof are expressly alleged as facts in the declaration, and that it contains express allegations of the number of the outstanding shares of stock in the bank and of the number of such shares held by the defendant, from which it is a mere easy matter of calculation to find that his pro rata share of the

deficiency is in excess of the par value of his shares. Therefore, there is no merit in the contention as a reason in support of the demurrer.

The causes of demurrer numbered 11 and 12 are based on the contention that the declaration does not show that the plaintiff is a proper party to bring this action, since it does not show with sufficient certainty that he is authorized by the laws of Rhode Island or by any competent court or authority thereof to bring such action; and cause 13 is based on a similar contention that "it appears from the declaration that the plaintiff is authorized to bring suit on said alleged contract by a statute of the State of New York, and it does not appear that said statute has any force or effect without the State of New York."

But it is clear from the language above quoted from the opinion in *Broderick* v. *Rosner, supra,* and the authorities cited therein, that the law of New York has vested in the plaintiff, as an executive officer of that state, the cause of action constituted by the contractual liability, under its constitution and laws, of the stockholders of the bank, which is incorporated under and is subject to the New York constitution and laws. It is also clear, from that language and those authorities, that "the subject matter is peculiarly within the regulatory power of New York"; that as to such liability the stockholders in other states have submitted themselves to the jurisdiction of New York; and that therefore the cause of action is within the scope of the full faith and credit clause of the constitution of the United States. It clearly follows that the plaintiff, in whom the cause of action is vested by the law of New York, is not obliged to obtain, from any source, an authority to pursue that cause of action in an appropriate court of the state of Rhode Island. These contentions are in our opinion without merit.

The remaining causes of demurrer stated by the defendant are only general and need no discussion, being sufficiently covered by what has been already stated *supra.*

The plaintiff's exception is sustained; the decision of the superior court sustaining the defendant's demurrer to the plaintiff's declaration is reversed; and the case is remitted to the superior court for further proceedings.

*Carl J. Austrian,* of New York, *Sisson & Fletcher,* for plaintiff.

*Dana M. Swan, Francis B. Keeney, Swan, Keeney & Smith,* for defendant.