MARY T. KELLY, complainant (GEORGE LETTERHOUSE, RO-
LAND P. STAPLES and MILTON W. BLACKMAR, peti-
tioners-appellants),

*v.*

NEW YORK TITLE AND MORTGAGE COMPANY, NATIONAL
MORTGAGE CORPORATION, LAND ESTATES, INCORPO-
RATED, and LIBERDAR HOLDING CORPORATION, defendants
(JOHN MILTON and MILTON M. GOLDMAN, receivers,
defendants-respondents).

[Argued October 29th, 1937.   Decided January 26th, 1938.]

*Mr. John D. Craven* (*Mr. Thomas G. Haight,* of counsel), for the appellants.

*Mr. Saul Nemser* and *Messrs. Bilder, Bilder & Kauffman,* for the respondents.

The opinion of the court was delivered by

PERSKIE, J.

Who has the right to the immediate possession of the *res* represented by Series JL-1, first mortgage certificates, which were issued and guaranteed by the National Mortgage Corporation? Is that right in the trustees who were elected and qualified, under a declaration of trust, to carry out a plan approved by the supreme court of New York for the reorganization of the National Mortgage Corporation, or is that right in the receivers of that corporation who were appointed by our court of chancery? Upon the answer to this question depends the propriety of the challenged order of the court of chancery, under date of September 14th, 1937, denying the prayer of the petition of George Letterhouse, Roland P. Staples and Milton W. Blackmar, trustees, for an order directing John Milton and Milton M. Goldman, receivers, and Commercial Trust Company of New Jersey, as depository, to surrender and deliver to the named trustees all of the property of the National Mortgage Corporation, or the proceeds

thereof deposited to secure certificates issued by it in Series JL-1, and granting the prayer of the receivers' cross-petition instructing and advising them to liquidate and administer the assets then in their possession, or in the possession of the Commercial Trust Company of New Jersey.

For a clearer and better understanding of the circumstances which give rise to the question, and our consideration and determination thereof, a statement of the history of these circumstances is necessary.

The National Mortgage Corporation was organized under the laws of the State of New York for the purpose of insuring mortgages and guaranteeing titles in the State of New Jersey, and in other states. It made loans secured by bonds and mortgages which in turn were sold by it to the investing public. It also grouped many of the bonds and mortgages which it owned, deposited them with a depository, and sold to the buying public participation certificates in the bonds and mortgages so grouped and deposited.

Pursuant to an agreement, under date of July 16th, 1929, between the National Mortgage Corporation and the Commercial Trust Company of New Jersey, the latter agreed to act as depository. One of the groups of the bonds and mortgages so deposited with the Commercial Trust Company of New Jersey is Series JL-1 and consists of one hundred and twenty-four bonds and mortgages, all covering real estate located in this state; some $80,847.50 representing bonds and mortgages withdrawn from the depository, and surrendered by the latter upon payment of the principal and interest due thereon; some properties obtained by foreclosure; the sum of all aggregating $1,441,509.50. Outstanding participation certificates against this fund are held by four hundred and eleven investors, holding five hundred and forty-nine certificates, and totaling $1,400,804.62. We are told that of the three hundred and twenty claims filed with the receivers by residents of New Jersey, in the aggregate sum of $1,276,156.62, approximately sixty-five per cent. of the claims are based on respondents' guarantee of the payment of participation certificates issued under this series.

Due to the then financial depression, the National Mortgage Corporation found itself in financial difficulties, and unable to pay either the principal or interest which it had thus guaranteed to the purchasing public. As a result thereof, and in pursuance of an order of the supreme court of New York, the property and business of the National Mortgage Corporation was, in August of 1933, taken over, or taken into possession, by the superintendent of insurance of the State of New York, as rehabilitator. Efforts at rehabilitation having failed, the superintendent of insurance was subsequently ordered to liquidate the affairs of the National Mortgage Corporation.

In the meantime, that is, during August and September of 1933, bills, subsequently consolidated, were filed in our court of chancery by one Mary T. Kelly and by Frank H. Taylor & Son Note First Name, Incorporated, of East Orange, New Jersey, in behalf of themselves and others either as certificate holders, creditors or stockholders against the National Mortgage Corporation asking that receivers be appointed.

It will serve no useful purpose to detail the allegations of these consolidated bills because the Mortgage Corporation entered an appearance, and submitted itself to the jurisdiction of the court of chancery by the filing of an answer admitting the allegations of the bills, as consolidated, and consenting to the appointment of receivers. The answer was signed for the National Mortgage Corporation by the special deputy superintendent of insurance of the State of New York. At the suggestion of the latter, who has since been succeeded by Milton M. Goldman, Mr. John Milton and he were, on September 9th, 1933, appointed as receivers and qualified as such.

Thereafter, on November 22d, 1933, the receivers so appointed filed a petition in chancery for instructions as to their rights and duties in respect to several matters. Advice and instructions were given. Generally stated, the order on the petition, dated September 12th, 1934, provided, among other things, that as *statutory* receivers, they had acquired

title to all of the bonds and mortgages and other property on hand in this state, including the properties to which title had been taken in foreclosure proceedings. A group of certificate holders appealed from that order. An adjustment was apparently effected, and the parties in interest petitioned the court of chancery for an order terminating the *statutory* receivership; discharging the receivers appointed as such; appointing receivers under the general *equity* powers of the court of chancery; and making that receivership ancillary to the proceedings in New York. Such an order was accordingly made and entered on July 11th, 1935.

Subsequently, on February 4th, 1936, pursuant to respondents' petition as *equity* receivers, our court of chancery entered an order instructing and advising them, generally stated, to execute and deliver instruments of title to the property in question to the mortgage commission of New York, or its nominee, which had taken the place of the superintendent of insurance of the State of New York (New York laws 1935, chapter 19; Mortgage Commission act).

Some months later, on April 21st, 1936, the supreme court of New York, pursuant to the Schackno act in that state (New York laws 1933, chapter 745, as amended) approved a plan of reorganization of the National Mortgage Corporation, which plan had been consented to by the requisite number of certificate holders, some seventy per cent. in amount. The amount required under the act is only two-thirds. Under this plan, Messrs. Letterhouse, Staples and Blackmar were elected trustees to effectuate the reorganization. As such trustees, they petitioned our court of chancery for an order directing the equity receivers in this state, respondent here, to turn over to them the immediate possession of the fund represented by Series JL-1. The receivers resisted this petition notwithstanding the fact that they had previously complied with an order of the court upon a similar petition with respect to the property represented by another series (JL-2) ; and that they subsequently complied with an order entered on March 2d, 1937, directing them to execute the necessary instruments to convey to the superintendent of insurance of

New York title to certain bonds, mortgages, and premises which had been acquired by foreclosure, and by deed in lieu thereof, which titles were wholly owned by the National Mortgage Corporation, and against which no certificates had been issued, and in which no individual had any interest. As a matter of fact the receivers have not appealed from either the order of March 2d, 1937, or that of February 4th, 1936.

In addition to resisting the granting of the trustees' petition, to turn over the assets of Series JL-1, the receivers cross-petitioned for additional advice and instructions.

In denying the trustees' petition, and in instructing and advising the receivers "to liquidate and administer the assets now in their possession or in the possession of the Commercial Trust Company of New Jersey until the further order of this court," the learned vice-chancellor concluded that by its answer to the consolidated bills of complaint, the predecessors of the present petitioners consented to the appointment of the New Jersey receivers, and that this consent was binding upon the petitioners. Such consent, the vice-chancellor found, took from the New York authorities all jurisdiction over the certificated issues involved. And he decided, since the assets were in this state and in reality belonged to the New Jersey creditors, this state alone had jurisdiction over these assets. The conclusion also was reached that the order of our court of chancery, entered on September 12th, 1934, instructing respondents who were then *statutory* receivers, was *res adjudicata* as to the issues here involved, and that the present petition merely constituted an attempt "to relitigate the issues raised by the statutory receivers' petition for instructions or else it must be translated to mean a petition for a rehearing after the time to appeal has expired." The vice-chancellor thereafter, in an addendum to his opinion, also treated the contention that to deny the petition before him would be to contravene the full faith and credit clause of our constitution. He concluded that this question did not require decision, but that it was questionable whether, under the Schackno act, *supra,* or under the Mortgage Commission act, *supra,* New York, by merely mailing notice to non-

resident certificate holders, could constitutionally acquire jurisdiction over, or pass title to, property not within its borders; and that the equity receivers alone, acting under the advice and instructions of our chancery court, could give "unimpeachable title" thereto. From an order based upon these conclusions, under date of September 14th, 1937, the New York trustees appeal.

1. In the light of the concurring view of counsel for the respective parties that we are not here called upon to determine in whom title to the fund in question resides, and we are not to be understood as expressing or intimating an opinion thereon, it seems clear to us that the crux of the case at bar, the answer to the stated question requiring decision in this cause, lies in the determination of which of the parties—the New York trustees, or our equity receivers—had the right to the immediate possession to the fund represented by Series JL-1 at the time the present petition was filed by the New York trustees. In order properly to answer this question we must ascertain and determine the status of the parties as of that time. In so doing, we are met, *in limine,* with the order of our court of chancery which was filed on July 11th, 1935. Under that order the *statutory* receivership was terminated; and the order of September 9th, 1933, under which they were so appointed was vacated; and in lieu thereof a general *equity* receivership was created and decreed to be ancillary to the New York proceedings; and John Milton and Milton M. Goldman were appointed as such *equity* receivers. It immediately becomes apparent, therefore, that if the order appointing statutory receivers was vacated, *a fortiori,* the order of September 12th, 1934, claimed to be *res adjudicata* of the present issues, and instructing petitioners as *statutory* receivers, cannot have the efficacy claimed for it.

Accordingly, at the time the present petition was filed, the New Jersey receivers were equity, and not statutory, receivers. As such, they merely had custody of, and not title to, the property in question. *Willink* v. *The Morris Canal and Banking Co., 4 N. J. Eq. 377, 400; State, New Jersey Southern Railroad Co.,* v. *Railroad Commissioners (Supreme Court),*

*41 N. J. Law 235, 249.* The receivers, therefore, took the
property in question "in the same condition and subject to
all the duties, obligations and liabilities that rested upon the
corporation itself." *State, New Jersey Southern Railroad
Co.* v. *Railroad Commissioners, supra* (at *p. 249*). The
New Jersey receivers, standing as they do, in place of the
National Mortgage Corporation are, therefore, not entitled
to the possession of the fund. For clearly, the transmutation
of the statutory into a general equity receivership was for the
purpose of divesting the title of the statutory receivers, and
to enable the New York authorities to administer the affairs
of the corporation with the New Jersey jurisdiction exercising
a merely ancillary authority. In view of the fact that the
reorganization plan was approved by seventy per cent. in
amount of the certificate holders, this move was manifestly
in accordance with the will of the majority. *Cf. Kipp* v.
*Fidelity Title and Mortgage, &c., Co., 116 N. J. Eq. 409,
414; affirmed, 117 N. J. Eq. 588.* As a matter of fact, no
certificate holder or creditor appears to have opposed the
present petition. Under these circumstances, to permit the
present receivers to withhold the possession of the property
is to arrogate to them the authority of statutory rather than
equity receivers. This cannot be done.

2. But it is stoutly urged, however, that the proceedings
in New York under which petitioners now claim the right to
the immediate possession of the fund (Series JL-1) are void
and of no effect because the supreme court of New York had
no jurisdiction over that fund since it was all physically
within the State of New Jersey and consisted of bonds and
mortgages on property within this state.

We are firmly of the opinion that there is no merit to this
claim. The reorganization proceedings in New York are
for the benefit of the certificate holders. Seventy per cent.
(in amount) of those for whose benefit the reorganization
was effected have actually consented to the plan presented.
And, so far as is made to appear, none of the remaining thirty
per cent. did complain, nor is any now complaining. Under
the circumstances exhibited, therefore, it was not the function

of the court of chancery to determine the validity and the scope of operation of the proceedings in New York under the Schackno act. Those questions, it seems to us, could only be urged by the parties in interest, by those affected, by the certificate holders, and not by the receivership which, on the record as submitted, has no authority to act for the New Jersey certificate holders, and which is purely ancillary to the primary reorganization proceedings in the State of New York. The only interest the National Mortgage Corporation, in whose stead the receivers stand, has in the reorganization is in the possibility for, and extent of, any surplus that might exist after the certificate holders have been satisfied.

Our courts, moreover, have held that the title of a corporation or of its successor necessarily has an extra-territorial effect, subject only to the jurisdiction of the state in which the *res* resides to effectuate its own policy, particularly in the protection of creditors residing there. *Converse* v. *Hamilton, 224 U. S. 243; 56 L. Ed. 749; Clark* v. *Williard, 294 U. S. 211; 79 L. Ed. 865. Cf. Gordon* v. *Spray Beach Hotel, Inc., 112 N. J. Eq. 469.* Inasmuch as no creditor here complains, there is no need for New Jersey to effectuate its own policy with regard to protecting any of its resident creditors. *Cf. Broderick* v. *Rosner, 294 U. S. 629; 79 L. Ed. 1100.*

In fine, we answer the stated question by saying that we perceive nothing, and nothing is brought to our attention, which, under the circumstances exhibited, should bar or prevent the certificate holders, through their elected trustees, from obtaining the immediate right to possession of the fund represented by Series JL-1 to the end that they may exercise that management and control of their own property in such manner as to them seems best.

We have carefully examined all other points raised and argued and find them to be without merit.

Accordingly, the challenged order is reversed, with costs.

*For affirmance*—WOLFSKEIL, RAFFERTY, JJ. 2.

*For reversal*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, JJ. 10.