[Civ. No. 48939. First Dist., Div. Two. Dec. 17, 1982.]

ROSS A. WILSON, Plaintiff and Respondent, v.
LOUISIANA-PACIFIC RESOURCES, INC., Defendant and Appellant.

COUNSEL

Stanley Sevilla for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

J. Lani Bader, Randall E. Kay and New & Kay as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**GRODIN, P. J.**—The question presented by this appeal, one of first impression and considerable significance, is whether the State of California may constitutionally impose its law requiring cumulative voting by shareholders upon a corporation which is domiciled elsewhere, but whose contacts with California, as measured by various criteria, are greater than those with any other jurisdiction.

Section 2115 of the California Corporations Code[1] provides for the application of various provisions of that code to a foreign corporation which (on the basis of a three-factor formula including property, payroll and sales) does a ma-

---

[1] Unless otherwise noted, all references are to the Corporations Code. Section 2115 provides:

"(a) A foreign corporation (other than a foreign association or foreign nonprofit corporation but including a foreign parent corporation even though it does not itself transact intrastate business) is subject to this section if the average of the property factor, the payroll factor and the sales factor (as defined in Sections 25129, 25132 and 25134 of the Revenue and Taxation Code) with respect to it is more than 50 percent during its latest full income year and if more than one-half of its outstanding voting securities are held of record by persons having addresses in this state. The property factor, payroll factor and sales factor shall be those used in computing the portion of its income allocable to this state in its franchise tax return or, with respect to corporations the allocation of whose income is governed by special formulas or which are not required to file separate or any tax returns, which would have been so used if they were governed by such three-factor formula. The determination of these factors with respect to any parent corporation shall be made on a consolidated basis, including in a unitary computation (after elimination of intercompany transactions) the property, payroll and sales of the parent and all of its subsidiaries in which it owns directly or indirectly more than 50 percent of the outstanding shares entitled to vote for the election of directors, but deducting a percentage of such property, payroll and sales of any subsidiary equal to the percentage minority ownership, if any, in such subsidiary. For the purpose of this subdivision, any securities held to the knowledge of the issuer in the names of broker-dealers or nominees for broker-dealers shall not be considered outstanding.

"(b) The following chapters and sections of this division shall apply to a foreign corporation subject to this section (to the exclusion of the law of the jurisdiction in which it is incorporated):

"Chapter 1 (general provisions and definitions), to the extent applicable to the following provisions;

"Section 301 (annual election of directors);

"Section 303 (removal of directors without cause);

"Section 304 (removal of directors by court proceedings);

"Section 305, subdivision (c) (filling of director vacancies where less than a majority in office elected by shareholders);

jority of its business in this state, where in addition a majority of its outstanding voting securities are held of record by persons having addresses in this state. Among the provisions are subdivisions (a), (b) and (c) of section 708,[2] which provide for cumulative voting.

Plaintiff Ross A. Wilson brought this action against Louisiana-Pacific Resources, Inc., a Utah corporation, seeking a declaratory judgment that the

"Section 309 (directors' standard of care);

"Section 316 (excluding paragraph (3) of subdivision (a) and paragraph (3) of subdivision (f) (liability of directors for unlawful distributions);

"Section 317 (indemnification of directors, officers and others);

"Sections 500 to 505, inclusive (limitations on corporate distributions in cash or property);

"Section 506 (liability of shareholder who receives unlawful distribution);

"Section 600, subdivisions (b) and (c) (requirement for annual shareholders' meeting and remedy if same not timely held);

"Section 708, subdivisions (a), (b) and (c) (shareholder's right to cumulate votes at any election of directors);

"Section 1001, subdivision (d) (limitations on sale of assets);

"Section 1101 (provisions following subdivision (e)) (limitations on mergers);

"Chapter 12 (commencing with Section 1200) (reorganizations);

"Chapter 13 (commencing with Section 1300) (dissenters' rights);

"Sections 1500 and 1501 (records and reports);

"Section 1508 (action by Attorney General);

"Chapter 16 (commencing with Section 1600) (rights of inspection).

"(c) Subdivision (a) shall become applicable to any foreign corporation only upon the first day of the first income year of the corporation commencing on or after the 30th day after the filing by it of the report pursuant to Section 2108 showing that the tests referred to in subdivision (a) have been met or on or after the entry of a final order by a court of competent jurisdiction declaring that such tests have been met.

"(d) Subdivision (a) shall cease to be applicable at the end of any income year during which a report pursuant to Section 2108 shall have been filed showing that at least one of the tests referred to in subdivision (a) is not met or a final order shall have been entered by a court of competent jurisdiction declaring that one of such tests is not met, provided that such filing or order shall be ineffective if a contrary report or order shall be made or entered before the end of such income year.

"(e) This section does not apply to any corporation with outstanding securities listed on any national securities exchange certified by the Commissioner of Corporations under subdivision (o) of Section 25100, or to any corporation if all of its voting shares (other than directors' qualifying shares) are owned directly or indirectly by a corporation or corporations not subject to this section."

[2]Section 708, as relevant, provides:

"(a) Every shareholder complying with subdivision (b) and entitled to vote at any election of directors may cumulate such shareholder's votes and give one candidate a number of votes equal to the number of directors to be elected multiplied by the number of votes to which the shareholder's shares are normally entitled, or distribute the shareholder's votes on the same principle among as many candidates as the shareholder thinks fit.

"(b) No shareholder shall be entitled to cumulate votes (i.e., cast for any candidate a number of votes greater than the number of votes which such shareholder normally is entitled to cast) unless such candidate or candidates' names have been placed in nomination prior to the voting and the shareholder has given notice at the meeting prior to the voting of the shareholder's intention to cumulate the shareholder's votes. If any one shareholder has given such notice, all shareholders may cumulate their votes for candidates in nomination.

"(c) In any election of directors, the candidates receiving the highest number of affirmative votes of the shares entitled to be voted for them up to the number of directors to be elected by such shares are elected."

defendant met the tests of section 2115, and that he was therefore entitled to cumulative voting in accordance with section 708. The trial court found that in the years preceding the action, the average of the defendant's property, payroll, and sales in California as defined by the California corporations statute exceeded 50 percent, and that more than 50 percent of its shareholders entitled to vote resided in California, so that the statutory conditions had been met. It also found that except for being domiciled in Utah and having a transfer agent there, defendant had virtually no business connection with Utah, that its principal place of business has been in California since at least 1971, that its meetings of shareholders and directors are held in California, and that all of its employees and all of its bank accounts are in California. Finally, the court concluded, contrary to defendant's contentions, that there existed no constitutional obstacle to the application of the cumulative voting requirement to defendant, and that its "[c]umulative voting will be in effect a judicial addendum to defendant's articles of incorporation, and all of its shareholders are entitled to cumulative voting whether they are California residents or not."

Defendant appealed from this judgment, challenging the trial court's finding that the statutory criterion with respect to shareholder residency had been met and renewing its constitutional challenges as well. During the pendency of the appeal, the California Corporations Commissioner certified the Pacific Stock Exchange, upon which appellant's securities are listed, under subdivision (o) of section 25100. This action made section 2115 inapplicable to defendant. (§ 2115, subd. (e).) Both parties strenuously urge us, however, to decide the constitutional issues presented, since there appear to be no published decisions on the constitutionality of section 2115. Appellant, moreover, urges that these issues are not moot as to it, since delisting from the Pacific Stock Exchange is a possibility, and since it is contemplating acquisition of new businesses in California which might be subject to section 2115. Because the constitutional issues presented are of general public interest and are likely to recur, we have decided to confront them as the parties request. (*DeRonde* v. *Regents of University of California* (1981) 28 Cal.3d 875, 880 [172 Cal.Rptr. 677, 625 P.2d 220]; *North San Diego County Transit Development Bd.* v. *Vial* (1981) 117 Cal.App.3d 27, 31 [172 Cal.Rptr. 440]; *Grasko* v. *Los Angeles City Board of Education* (1973) 31 Cal.App.3d 290, 299 [107 Cal.Rptr. 334].)

*Discussion*

The law of the State of Utah provides for straight voting in an election of directors, but permits cumulative voting if the articles of incorporation so provide. (Utah Bus. Corp. Act (1953) § 16-10-31.) Neither the articles of incorporation nor the bylaws of appellant provide for cumulative voting. Appellant contends that for California to require cumulative voting under these circumstances would violate (1) the full faith and credit clause of the United States

Constitution; (2) the commerce clause of the United States Constitution; (3) the "property and vested right protections" of the United States and California Constitutions; (4) the contract clauses of the United States and California Constitutions; and (5) the equal protection clause of the United States Constitution. Finally, appellant challenges the trial court's declaration concerning the impact of section 2115 on its articles. We consider these contentions in turn.

## I. *Full Faith and Credit*

█  The full faith and credit clause of the federal Constitution (art. IV, § 1) requires that "Full Faith and Credit . . . be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. . . ." Although the phrase "public Acts, Records and Judicial Proceedings" has been construed to include statutes as well as judicial decisions (e.g., *Bradford Elec. Co.* v. *Clapper* (1932) 286 U.S. 145 [76 L.Ed. 1026, 52 S.Ct. 571, 82 A.L.R. 696]), the Supreme Court has recognized that "[a] rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another." (*Alaska Packers Assn.* v. *Comm'n.* (1935) 294 U.S. 532, 547 [79 L.Ed. 1044, 1052, 55 S.Ct. 518].)

Under the doctrine of *Alaska Packers, supra,* determination as to application of conflicting statutes was to be made "by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight." (294 U.S. at p. 547 [79 L.Ed. at p. 1052].) In this balancing process it was presumed that "every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis, that of the conflicting interests involved those of the foreign state are superior to those of the forum." (*Id.,* at pp. 547-548 [79 L.Ed. at p. 1052].)

Since *Alaska Packers,* the Supreme Court has abandoned the weighing-of-interests requirement in favor of a less exacting standard corresponding to the requirements of the due process clause. (*Allstate Ins. Co.* v. *Hague* (1981) 449 U.S. 302, 308, fn. 10 [66 L.Ed.2d 521, 527, 101 S.Ct. 633].) In determining whether a state's choice-of-law decision exceeds federal constitutional requirements, the current rule is that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant con-

tact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." (*Id.*, at pp. 312-313 [66 L.Ed.2d at p. 531].)

We consider that test is met here; the criteria which a foreign corporation must meet in order to be subject to section 2115 assure the existence of significant aggregation of contacts. And the state interests created by those contacts are indeed substantial. California's present law requiring cumulative voting by shareholders continues in effect a policy which has existed in this state since the Constitution of 1879.[3] In *Western Air Lines, Inc.* v. *Sobieski* (1961) 191 Cal.App.2d 399 [12 Cal.Rptr. 719], the court, observing that "[i]t would seem too evident to require protracted dissertation that the right of cumulative voting is a substantial right" (*id.*, at p. 414), held that even in the absence of express statutory mandate, the Corporations Commissioner was justified in refusing to permit the elimination of cumulative voting by a "pseudo foreign" corporation, i.e., "one with its technical domicile outside of this state but one which exercises most of its corporate vitality within this state." (*Id.*, at p. 412.) A contrary holding, the court reasoned, "would enable a foreign corporation to destroy the rights which the State of California has deemed worthy of protection by the enactment of the Corporate Securities Act." (*Id.*, at pp. 413-414.) Section 2115 incorporates the policy reflected in *Sobieski* and applies it more generally, to all pseudo-foreign corporations meeting the statutory criteria.

Utah, on the other hand, has no interests which are offended by cumulative voting; and, whatever interest it might have in maintaining a *laissez faire* policy on that score would seem to be clearly outweighed by the interests of California, in which a majority of shareholders and the corporation's business activity is located. Thus, even on the earlier analysis of *Alaska Packers*, the full faith and credit clause provides no bar to the application of California's statute.[4]

---

[3]Article XII, section 12 of the 1879 Constitution provided:

"In all elections for directors or managers of corporations, every stockholder shall have the right to vote, in person or by proxy, the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them, on the same principle, among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner, except that members of cooperative societies formed for agricultural, mercantile, and manfacturing purposes, may vote on all questions affecting such societies in manner prescribed by law." Although this constitutional provision was repealed in 1930 (Stats. 1931, p. lvi), the General Corporation law in 1931 continued the right of cumulative voting formerly guaranteed by the Constitution (Stats. 1931, ch. 862, § 320, pp. 1780-1781).

In the new California General Corporations Law, which became effective January 1, 1977, the Legislature rejected a State Bar committee's recommendation that cumulative voting be permissive (see Mattes, *The Burden of the Corporate Director Elected Noncumulatively* (1975) 63 Cal.L.Rev. 463, 464), and retained the state's mandatory policy (see Corp. Code, § 708, added by Stats. 1975, ch. 682, § 7, p. 1569).

[4]Justice Stevens, in his concurring opinion in *Allstate Ins. Co.* v. *Hague, supra,* 449 U.S. at pages 320-332 [66 L.Ed.2d at pages 535-543], would have the court distinguish between

Appellant relies upon *Broderick* v. *Rosner* (1935) 294 U.S. 629 [79 L.Ed. 1100, 55 S.Ct. 589, 100 A.L.R. 1133], which held that the full faith and credit clause required a New Jersey court to entertain a suit by a New York corporation seeking assessment from shareholders pursuant to a New York statute, despite a New Jersey law which barred suits based on foreign assessment statutes. That case, however, is explainable on the basis that while New York had a clear interest in the application of its policy, New Jersey "had declared no conflicting policy of protecting its residents, as stockholders, against such liability. Neither had it suggested any reason relating to the administration of its courts why actions to enforce such liability should not be brought in New Jersey. It had only a pretended concern for the procedural aspects of such actions . . . ." (Currie, Selected Essays on the Conflict of Laws (1963) p. 347; see also Ross, *"Full Faith and Credit" in a Federal System* (1936) 20 Minn.L.Rev. 140, 178 ["It is submitted the case of *Broderick* v. *Rosner* goes no further than to hold that a state may not deny recovery on foreign facts when its own domestic law would award recovery on parallel facts occurring within its own borders"].) Even if there were vitality left in *Broderick* after *Allstate* (and it is perhaps significant that it is not cited in the latter case), *Broderick* is clearly distinguishable from a situation such as this, involving the application of an explicit state policy of substance to a pseudo-foreign corporation with its "center of gravity" (cf. *Hanson* v. *Denckla* (1958) 357 U.S. 235, 254 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228]) in this state.

The "internal affairs doctrine," according to which courts traditionally looked to the law of the state of incorporation in resolving questions regarding a corporation's internal affairs (see Oldham, *California Regulates Pseudo-Foreign Corporations—Trampling Upon the Tramp?* (1977) 17 Santa Clara L.Rev. 85, 85-90), has no application here. That doctrine has never been followed blindly in California (see *Wait* v. *Kern River Mining etc. Co.* (1909) 157 Cal. 16, 21 [106 P. 98]; see also *Western Air Lines, Inc.* v. *Sobieski, supra,* 191 Cal.App.2d 399); it is inconsistent with the "comparative impairment" approach used by this state in resolving conflict of law problems (*Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157, 164-165 [148 Cal.Rptr. 867, 583 P.2d 721]); and it is in any event not determinative of the constitutional issue. This is not a common choice-of-law question; the Legislature has resolved the conflicts issue by mandating application of this state's law under certain conditions. The question is whether that mandate is constitutional. (See *Allstate Ins. Co.* v. *Hague, supra,* 449 U.S. at pp. 307-308 [66 L.Ed.2d at p. 527].) For the reasons we have discussed, we conclude that it is, so far as the full faith and credit clause is concerned.

---

whether the state of the forum is *required* by the full faith and credit clause to apply the law of a different state, and whether it is *prevented* by the due process clause, from applying its own law. While we need not decide the question here, it would appear that California's interests are sufficient to require the application of its statute by any state which considers the issue.

## II. *Commerce Clause*

■ Although article I, section 8, clause 3 of the federal Constitution grants Congress power "[t]o regulate commerce . . . among the several States," Congress has not chosen to regulate the subject in litigation here nor has it undertaken to establish guidelines for regulation by the states. Appellant's commerce clause argument is based, therefore, upon the negative implications of dormant congressional authority.

The United States Supreme Court has established the standard for determining the validity of state statutes in such situations: "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. [Citation.] If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." (*Pike* v. *Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 178, 90 S.Ct. 844]; see also, *Raymond Motor Transportation, Inc.* v. *Rice* (1978) 434 U.S. 429, 441-442 [54 L.Ed.2d 664, 675, 98 S.Ct. 787].)

We observe, initially, that the challenged statute "regulates even-handedly" within the meaning of the *Pike* guidelines; it applies to covered foreign corporations the same rules which are applied to corporations domiciled within the state. The statute thus imposes no special or distinct burden upon out-of-state interests. (See Tribe, American Constitutional Law (1978) pp. 326-327.)

The nature, strength, and duration of California's interest in the cumulative voting principle, and in the application of that principle to pseudo-foreign corporations have previously been considered in this opinion. There remain to be considered the effects of that application upon interstate activities.

One effect of section 2115 may well be to deter corporations from making their legal homes elsewhere for the purpose of avoiding California's protective corporate legislation, and thus to diminish the practice of "charter-mongering" among states (see Jennings, *The Role of the States in Corporate Regulation and Investor Protection* (1958) 23 Law & Contemp. Prob. 193, 194-196); but that, presumably, is not an effect which would offend the policies of the commerce clause; and appellant does not so contend. Rather, appellant contends that the application of cumulative voting requirements to pseudo-foreign corporations as provided by section 2115 will have the effect of causing it and other foreign corporations already operating in California to reduce their property, payroll, and sales in this state below the 50 percent level, and will deter foreign corpora-

tions contemplating the transaction of business in this state from increasing their business activities above that level.

There is no suggestion, or evidence, that section 2115 was adopted for the purpose of deterring foreign corporations from doing business in this state; nor is there any direct evidence that it has had or will have such an effect. On the contrary, what evidence there is in the record on this point consists of testimony by appellant's president that he knew of no adverse effect on appellant's business which would be caused by cumulative voting.

Appellant argues that adverse consequences are predictable from "potentially conflicting claims of shareholders as to which state [law] governs" the method of voting by shareholders,[5] and from the "transient nature of the applicability of the California statute." It is perhaps true that "[i]n corporation law, uncertainty about what the law is or what law is applicable to a given transaction constitutes a far more serious problem than in areas of the law which do not require comprehensive and continuous planning." (Halloran & Hammer, *Section 2115 of the New California General Corporation Law—The Application of California Corporation Law to Foreign Corporations* (1976) 23 UCLA L.Rev. 1282, 1283.) Professor Kaplan advises, however, that while the specter of "unbearable chaos and uncertainty" resulting from dual or variable sets of rules constitutes the "primary argument against the application of local law to a foreign corporation," the "precise details of such confusion are seldom stated," and the argument is "seldom challenged, though it is probably neither so cogent nor so compelling as it might at first seem." (Kaplan, *Foreign Corporations and Local Corporate Policy* (1968) 21 Vand.L.Rev. 433, 476.) Professor Kaplan observes that no such unbearable confusion has appeared from the operations of the New York statutes imposing certain duties upon foreign corporations, and opines that the "contention of the *Restatement* and of other commentators that avoidance of confusion and difficulty makes it imperative to look to the law of the state of incorporation seems belied by the experience of New York." He notes also that while extensive overlap in state and federal regulation of many corporate matters, particularly in the area of corporate internal affairs, "has created a situation of theoretical conflict, the practical results have been accepted and viable, and the duplication of controls has resulted not so much in conflict as in cumulative standards." (*Id.,* at pp. 476-477, fn. omitted.)

The potential for conflict and resulting uncertainty from California's statute is substantially minimized by the nature of the criteria specified in section 2115. A corporation can do a majority of its business in only one state at a time; and it

---

[5]Appellant's argument is actually broader than we have stated it, encompassing other provisions of the Corporations Code made applicable to pseudo-foreign corporations by section 2115. For purposes of this case, however, it is necessary to consider only the cumulative voting requirement.

can have a majority of its shareholders resident in only one state at a time. If a corporation meets those requirements in this state, no other state is in a position to regulate the method of voting by shareholders on the basis of the same or similar criteria. It might also be said that no other state could claim as great an interest in doing so.[6] In any event, it does not appear that any other state has attempted to do so.[7] If California's statute were replicated in all states, no conflict would result. We conclude that the potential for conflict is, on this record, speculative and without substance.

What appellant refers to as the "transient nature" of the statute's applicability, i.e., its application from year to year based upon the prior year's activity, could conceivably be a problem for a corporation whose business activity within the state fluctuated widely, but the "worst-case" scenario—that such a corporation might find it necessary to adopt cumulative voting as a means of assuring compliance on a continuing basis—does not appear to be so burdensome as to result in a significant restraint upon commerce among the states. We are not told, for example, of any diminution of activity in this state by foreign corporations as a result of *Western Air Lines, Inc.* v. *Sobieski, supra,* 191 Cal.App.2d 399.

---

[6]The high threshold requirements of section 2115 distinguish this case from *Edgar* v. *MITE Corp.* (1982) 457 U.S. 624 [73 L.Ed.2d 269, 102 S.Ct. 2629], where the United States Supreme Court struck down an Illinois statute regulating tender offers as violative of the commerce clause. The Illinois statute applied to target companies of which shareholders located in Illinois owned 10 percent of the stock subject to the offer, *or* for which any two of the following three conditions are met: the corporation has its principal executive office in Illinois, is organized under the laws of Illinois, or has at least 10 percent of its stated capital and paid-in surplus represented within the state. (457 U.S. at p. 627 [73 L.Ed.2d at p. 273, 102 S.Ct. at p. 2633].) Obviously, several states could apply such statutes to a company; such is not the case with section 2115. The court noted that the Illinois law on its face would apply even if not a single one of a company's shareholders were a resident of Illinois. (*Id.,* at p. 642 [73 L.Ed.2d at p. 283, 102 S.Ct. at p. 2641].) "Thus the Act could be applied to regulate a tender offer which would not affect a single Illinois shareholder." (*Ibid.*) The court found it apparent that the statute "is a direct restraint on interstate commerce and that it has a sweeping extraterritorial effect." Such regulation by other states would stifle securities transactions. (*Ibid.*) We find the higher degree of contact with the state which the California statute requires, the significantly decreased if not eliminated possibility of conflicting regulation, and the minimal burden on commerce present here provide a principled distinction between this case and *MITE.* (See also *Great Western United Corp.* v. *Kidwell* (5th Cir. 1978) 577 F.2d 1256, revd. for lack of venue *sub nom. Leroy* v. *Great Western United Corp.* (1979) 443 U.S. 173 [61 L.Ed.2d 464, 99 S.Ct. 2710], invalidating on both preemption and commerce clause grounds an Idaho statute regulating tender offers where only 2 percent of the Idaho corporation's stockholders were residents there.)

[7]Of the statutes pointed out by respondent as being similar to Corporations Code section 2115, only the New York statute is currently in effect. (See N.Y. Bus. Corp. Law, §§ 1317-1320 (McKinney 1963 & Supp. 1981.) It should be noted, however, that while the specific aim of the California statute "is to extend to pseudo-foreign corporations its traditional protection of the rights of shareholders and creditors [,] New York . . . was as interested in liberalizing its entire statute to keep pace with the more permissive states as it was in foreclosing use of foreign incorporations as a means of escaping local regulation." (Note, *The Pseudo-Foreign Corporation in California* (1976) 28 Hastings L.J. 119, 126, fn. omitted.) The resulting doubt as to whether the New York statute has had an impact on foreign corporations is heightened by the dearth of reported cases under it. (*Ibid.*)

Commentators have generally applauded the California Legislature for "providing an apparently simple and thorough determination of state interest in foreign corporations," thus resolving the uncertainties which resulted from *Western Air Lines, Inc.* v. *Sobieski, supra* (Comment, *California's New General Corporation Law: Quasi-Foreign Corporations* (1976) 7 Pacific L.J. 673, 693), and establishing a "rational means to allocate the regulation of a corporation to the state to which it is primarily related" (Note, *The Pseudo-Foreign Corporation in California, supra,* 28 Hastings L.J. 119, 147), through a "narrow exception to the internal affairs doctrine in situations where California's interests are clearly paramount." (Oldham, *California Regulates Pseudo-Foreign Corporations—Trampling Upon the Tramp?, supra,* 17 Santa Clara L.Rev. 85, 98; but cf. Halloran & Hammer, *Section 2115 of the New California Corporation Law—The Application of California Corporation Law to Foreign Corporations, supra,* 23 U.C.L.A. L.Rev. 1282, 1283.) We conclude that to the extent that the cumulative voting requirement imposed by section 2115 upon pseudo-foreign corporations is shown to have any effect upon interstate commerce, the effect is incidental, and minimal in relation to the purpose which that requirement is designed to achieve.

### III. *Due Process*

Appellant contends that section 2115 is a retrospective law which impairs property rights and destroys vested rights in violation of due process. Before 1977 the California Corporations Code did not purport to apply directly to foreign corporations, and appellant made substantial investments in California before section 2115 was enacted in 1977. Its 5,000 shareholders had a vested voting right, it argues, to insist that their directors be elected by the straight voting procedure authorized by Utah law. This right, it asserts, was violated by section 2115.

The standard of review of economic legislation such as section 2115 is clear. Such legislative acts are clothed with a presumption of constitutionality and ". . . 'the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.' [Citation.]" (*Duke Power Co.* v. *Carolina Env. Study Group* (1978) 438 U.S. 59, 83 [57 L.Ed.2d 595, 618, 98 S.Ct. 2620].)

We discern neither arbitrariness nor irrationality in section 2115. As one comprehensive comment on the statute has pointed out, the section "attempts to insure that the social policies of California, as manifested in its corporations code, will no longer be circumvented by such [pseudo-foreign] corporations pursuant to the internal affairs doctrine." (Oldham, *California Regulates Pseudo-Foreign Corporations—Trampling Upon the Tramp?, supra,* 17 Santa Clara L.Rev. 85, 90.) Such a desire to assert control over the affairs of foreign

corporations has been upheld by no less an authority than Justice Cardozo: "[W]hen countless corporations, organized on paper in neighboring states, live and move and have their being in New York, a sound public policy demands that our legislature be invested with [a] measure of control." (*German-American Coffee Co.* v. *Diehl* (1915) 216 N.Y. 57 [109 N.E. 875, 877].) In sum, "Section 2115 reflects a legislative judgment that California has the most significant relationship to a pseudo-foreign corporation which satisfies the section 2115 tests, and that California has the greatest interest in regulating such a corporation, since its principal place of business [is] in California and the majority of its shareholders reside in California." (Oldham, *California Regulates Pseudo-Foreign Corporations—Trampling Upon the Tramp?, supra,* 17 Santa Clara L.Rev. 85, 98, fn. omitted.) Such a judgment—in view of the significant social costs which might result if pseudo-foreign corporations could ignore the public policies of this state—is not irrational.

Nor can appellant claim that California is applying its law to a matter with which the state has no significant contacts. (Cf. *Home Ins. Co.* v. *Dick* (1930) 281 U.S. 397, 408 [74 L.Ed. 926, 933, 50 S.Ct. 338, 74 A.L.R. 701].) Section 2115 only applies when a corporation has significant—and predominant—contacts with California. Under those circumstances, there is no due process violation in the application of a statute such as section 2115. (See generally *Allstate Ins. Co.* v. *Hague, supra,* 449 U.S. 302, 308-309 [66 L.Ed.2d 521, 527-529]; *Clay* v. *Sun Ins. Office, Ltd.* (1964) 377 U.S. 179 [12 L.Ed.2d 229, 84 S.Ct. 1197]; *Watson* v. *Employers Liability Corp.* (1954) 348 U.S. 66, 70-73 [99 L.Ed. 74, 80-83, 75 S.Ct. 166]; *Alaska Packers Assn.* v. *Comm'n., supra,* 294 U.S. 532, 540-543 [79 L.Ed. 1044, 1048-1050].)

## IV. *Contract Clause*

■ Appellant next argues that section 2115 impermissibly infringes on its corporate charter from the State of Utah in violation of the contract clause of the federal and state Constitutions. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.)

The Supreme Court set forth the definitive standard for contract clause analysis in *Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234, 244-245 [57 L.Ed.2d 727, 736-737]: "[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation."

In *Spannaus,* the court struck down a Minnesota law which provided that a private employer of 100 employees or more which provided pension benefits under a qualified plan was subject to a "pension funding charge" if it either terminated the plan or closed a Minnesota office. The charge was assessed if the pension funds were not sufficient to cover full pensions for all employees who had worked at least 10 years. (438 U.S. at p. 238 [57 L.Ed.2d at p. 732].) The company "relied heavily, and reasonably" on legitimate contractual expectations in calculating its annual contributions to its pension funds (*id.,* at p. 246 [57 L.Ed.2d at p. 737]); the effect of the state law on its contractual obligation was "severe" (*ibid.*) since the company was assessed an immediate pension funding charge of approximately $185,000 when it proceeded to close its Minnesota office. (*Id.,* at p. 247 [57 L.Ed.2d at p. 738].)

Here, on the other hand, defendant shows only that its charter agreement has been changed to provide for cumulative voting; no showing whatever of hardship is made. This is a paradigm case of "minimal alteration" of contract (*id.,* at p. 245 [57 L.Ed.2d at p. 737]). Section 2115's requirement of cumulative voting is "a mild one indeed, hardly burdensome . . . but nonetheless an important one to the State's interest. The Contract Clause does not forbid such a measure." (*El Paso* v. *Simmons* (1965) 379 U.S. 497, 516-517 [13 L.Ed.2d 446, 459, 85 S.Ct. 577].)

## V. *Equal Protection*

■ Appellant contends that section 2115 violates the equal protection clause of the Fourteenth Amendment to the federal Constitution because foreign corporations whose securities are listed on a national securities exchange certified by the California Commissioner of Corporations are exempt from its application.

Classifications made by economic regulations are upheld if a rational basis supports them. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." (*Railway Express* v. *New York* (1949) 336 U.S. 106, 110 [93 L.Ed. 533, 539, 69 S.Ct. 463].) "States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." (*New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303 [49 L.Ed.2d 511, 517, 96 S.Ct. 2513].)

We have no difficulty discerning a rational basis behind the exemption for corporations listed on certified stock exchanges. While some of the internal affairs covered by section 2115 are not covered by federal securities regulations (see Comment, *California's Statutory Attempt to Regulate Foreign Corporations: Will it Survive the Commerce Clause?* (1979) 16 San Diego L.Rev. 943,

951), the Legislature may well have reasoned that the disclosure requirements and other forms of regulation imposed upon listed securities, combined with the presumably greater liquidity of such investments, and the higher degree of scrutiny to which they are subjected in the marketplace, provide an adequate substitute, in the case of foreign corporations,[8] for the regulations imposed by section 2115. There is no reason to suspect that the Legislature, in providing for the challenged exemption, was motivated by favoritism toward corporations whose securities are listed on certified exchanges, or by animosity toward corporations whose securities are not. The criterion is neutral, and appears to serve a legitimate legislative objective. We find with it no constitutional fault.

## VI. *"Judicial Addendum"*

Appellant's final contention is that the trial court improperly "amended" its articles when it declared that cumulative voting should be allowed all shareholders, Californians and non-Californians alike.

This contention is without merit. Section 2115 applies to a covered foreign corporation "to the exclusion of the law of the jurisdiction in which it is incorporated." (§ 2115, subd. (b).) As we have already concluded that California's public policy favoring cumulative voting outweighs Utah's neutral policy relating to shareholder voting—especially where, as here, the corporation's business is centered in California and it does no business in Utah—the trial judge properly held that section 2115 allows cumulative voting for all shareholders. Any other result would be unworkable. Nor does such a result work any hardship on appellant, since Utah law allows a corporation to provide for cumulative voting in its articles.

The judgment is affirmed.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied January 11, 1983, and appellant's petition for a hearing by the Supreme Court was denied February 16, 1983. Grodin, J., did not participate therein.

---

[8]Appellant, as a foreign corporation, is not in a position to claim denial of equal protection arising from the state's more restrictive treatment of domestic corporations, which cannot claim exemption based upon listing with certified exchanges. The distinction between domestic and foreign corporations in that respect would, however, likewise appear reasonable.