**EXAMEN, INC., a Delaware corporation, Plaintiff,**

**v.**

**VANTAGEPOINT VENTURE PARTNERS 1996, a Delaware limited partnership, Defendant.**

C.A. No. 1142–N.

Court of Chancery of Delaware, New Castle County.

Submitted: March 29, 2005.
Decided: March 31, 2005.

Martin P. Tully, Esquire, David J. Teklits, Esquire, Thomas W. Briggs, Jr., Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Greg L. Johnson, Esquire, Pillsbury Winthrop LLP, Sacramento, California, Attorneys for the Plaintiff.

J. Travis Laster, Esquire, Brock E. Czeschin, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware; Michael D. Torpey, Esquire, James N. Kramer, Esquire, Justin M. Lichterman, Esquire, Orrick, Herrington & Sutcliffe LLP, San Francisco, California, Attorneys for the Defendant.

## OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

The plaintiff, a Delaware corporation, seeks a judicial declaration that a stockholder vote on a pending merger is governed by Delaware law. If the vote is governed by Delaware law, common stockholders and preferred stockholders will vote on the merger as a single class.

The defendant, a large venture capital firm that owns 83% of the corporation's preferred stock, argues that California law may control. It relies on a section of the California Corporation Code that suggests California law may apply to govern aspects of the internal affairs of the plaintiff Delaware corporation because it is headquartered in, and has other contacts with, California. If California law were to apply to determining the voting rights of the Delaware corporation's stockholders in connection with the proposed merger, the preferred stockholders would have the right to vote as a separate class, effectively giving the defendant a veto over the merger.

The defendant claims that discovery is needed to determine whether the plaintiff's contacts with California meet the statutory levels that could subject the proposed stockholder vote to California law. The plaintiff, arguing that discovery is unnecessary because Delaware law controls the voting rights of stockholders of the Delaware corporation, has moved for judgment on the pleadings. For the reasons discussed herein, the court grants the motion.

## II.

### A. The Parties

The plaintiff, Examen, Inc., is a Delaware corporation that provides web-based management solutions to companies throughout the United States. It has 8,626,826 shares of common stock and 1,090,589 shares of Series A preferred stock outstanding. The preferred stock is convertible to 1,670,782 shares of common. According to its website, Examen is a privately owned corporation, headquartered in Sacramento, California with regional offices in California, Connecticut, Illinois, Massachusetts, and Texas.[1]

The defendant, VantagePoint Venture Partners 1996, is a Delaware limited partnership that owns 83% of Examen's preferred stock. VantagePoint owns no shares of Examen's common stock. According to its website, VantagePoint "is one of the largest and most active venture firms in the world."[2] It has offices in Manhattan and San Bruno, California.[3]

### B. The Dispute

Examen recently entered into a merger agreement with Reed Elsevier, Inc., a Massachusetts corporation. The agreement was approved by Examen's board of directors on February 15, 2005. Immediately thereafter, Examen began preparations for a stockholder vote on the merger. Its preparations were soon complicated by VantagePoint's assertion that Examen's preferred stockholders are entitled to a separate class vote.

Examen argues that, under its charter documents and Delaware General Corporation law, all stockholders vote together as a single class. Examen maintains that the total number of voting shares is 10,-297,608, which represents the common stock outstanding plus the preferred stock on a convertible basis. Examen contends that a majority vote of these shares, 5,148,-805 votes, constitutes the required votes necessary to approve the merger.

### C. Procedure

In its complaint filed March 3, 2005, Examen seeks a judicial declaration that California law, including but not limited to section 2115 of the California Corporations Code ("CCC"), does not apply to the voting rights of its stockholders. Examen argues that a stockholder vote is governed by the internal affairs doctrine, which states that the internal affairs of a corporation are governed by the law of its state of incorporation. Examen comes before this court in expedited proceedings because its merger agreement with Reed Elsevier expires on April 15, 2005.

In response to Examen's complaint, VantagePoint filed an action in California Superior Court on March 8, 2005. In the California action, VantagePoint requested discovery to determine whether Examen is subject to CCC § 2115.[4] VantagePoint argues that, if it could show that Examen is

---

1. http://www.examen. com/about /company—overview .html

2. http://www.vpvp.com/

3. *Id.*

4. Notably, VantagePoint did not seek to enjoin the merger in its California action. Moreover, it has allowed six weeks to pass

covered by section 2115, the two classes of stock would vote separately on the merger, effectively giving VantagePoint veto power.

On March 10, acting on Examen's request for an expedited hearing, this court set for March 29 a hearing on Examen's motion for judgment on the pleadings. On March 21, the California court stayed that action until this court rules.[5]

In its answering brief, filed after the California court's ruling, VantagePoint claims there is no case or controversy between the parties. VantagePoint maintains that until it takes discovery and there is a factual inquiry into Examen's status under section 2115, this court may not hear this case. Unless Examen is found to be subject to section 2115, VantagePoint argues, there is no actual controversy between itself and Examen. This is so, the argument goes, because if Examen's contacts with California do not subject Examen to section 2115, Delaware law admittedly applies and all stockholders vote as a single class. Therefore, VantagePoint contends, until Examen's status is determined, there is no case or controversy that is properly before this court.[6]

Alternatively, VantagePoint argues that section 2115 can be applied in conjunction with Delaware law. It argues that section 2115, like NYSE or NASD rules, gives stockholders an additional level of protection over and above Delaware law. VantagePoint maintains that this "additional protection" interpretation of section 2115 is correct despite the plain language of the statute that appears on its face to exclude the application of Delaware corporate law.[7] In an effort to patch the obvious logical gap in its argument, VantagePoint submits that this court is free to perform judicial surgery on section 2115, excising the problematic exclusionary phrase.

In addition, VantagePoint argues that this court cannot decide the issue presented as a choice of law matter. It contends that in order to apply Delaware law to the proposed stockholder vote, this court would need to determine that section 2115 is unconstitutional. VantagePoint argues that such a determination is beyond the reach of this court's judicial power.

### III.

 "In determining a motion under Court of Chancery Rule 12(c) for judgment

---

without seeking an injunction in any court, even though the merger agreement expires in two weeks.

5. *VantagePoint Venture Partners v. Examen, Inc.*, C.A. 05AS00982 (Cal.Super.Ct. Mar. 21, 2005), Def.'s Answering Br. Ex. A.

6. In the hearing on March 29, VantagePoint attempted to ignore critical facts about its status as a venture capital firm and its relationship with Examen. VantagePoint is a sophisticated investor that negotiated the purchase of Examen's preferred stock. If it wanted a class vote on mergers, it should have bargained for that right. It obviously knew how to bargain for class voting rights related to its preferred stock, as shown by its right to elect a director. *See* Certificate of Designations of Series A Preferred Stock of

Examen, Inc., Section D(3), Pl.'s Opening Br. Ex. C (stating in relevant part, "The holders of the Series A Preferred Stock will be entitled, *voting as a separate class*, to elect one (1) director, and the holders of the Common Stock, voting as a separate class, will be entitled to elect the balance of the directors.") (emphasis added). To argue now that Delaware's corporate law does not control appears to be nothing more than an attempt to secure rights not bargained for in the stock purchase agreement to gain leverage over the other Examen stockholders.

7. CCC § 2115(b) ("Except as provided in subdivision (c), the following chapters and sections of this division shall apply to a foreign corporation as defined in subdivision (a) (*to the exclusion of the law of the jurisdiction in which it is incorporated*).") (emphasis added).

on the pleadings, a trial court is required to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[8] "A party is entitled to judgment on the pleadings when, accepting the well pleaded facts admitted in the Answer to be true, there is no material fact in dispute and the moving party is entitled to judgment under the law."[9] A stockholder's right to participate in a class vote is a matter of law that may be decided on a motion for judgment on the pleadings.[10]

## IV.

### A. Declaratory Judgment

 "Declaratory judgment is appropriate only if there is an actual controversy between the parties."[11] In this case, there is an actual controversy between Examen and VantagePoint. Examen's board has approved a merger with Reed Elsevier and is in the process of getting stockholder approval. Yet VantagePoint, Examen's majority preferred stockholder, is attempting to interrupt the voting process by asserting that preferred stockholders are entitled to a separate class vote under California law. There is clearly a controversy when one party seeks to consummate its merger agreement and the other party threatens to block it. The fact that the merger agreement expires on April 15 makes the controversy timely.

VantagePoint argues that the controversy is not ripe under *Palmer v. Arden–Mayfair Inc.* in that Examen is, like Arden–Mayfair was, "under no threat of enforcement of the California statute against it."[12] This argument is meritless. VantagePoint filed a mirror image lawsuit in California seeking declaratory relief on exactly the same facts presented here. If the controversy was not ripe, VantagePoint would not have filed its California complaint. As the California Superior Court held, both courts "are faced with essentially the same prayer for declaratory relief."[13]

Therefore, this court finds that there is an actual, ripe controversy between the parties.

### B. Choice Of Law

 Next, the court turns to VantagePoint's choice of law argument. VantagePoint claims that the issue presented is not a choice of law issue because section 2115 does not conflict with Delaware law. VantagePoint maintains that section 2115 operates only in addition to rights granted under Delaware corporate law and, further, that section 2115, like NYSE and NASD rules, is simply additive to Delaware law. This is clearly not the case. Section 2115 expressly states that it operates "to the exclusion of the law of the jurisdiction in which [the company] is incorporated."[14] Nothing could be more

---

8. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund*, 624 A.2d 1199, 1205 (Del.1993).

9. *Warner Communications, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del.Ch.1989), *aff'd*, 567 A.2d 419 (Del.1989).

10. *See, e.g., id.* at 971 (holding on a motion for judgment on the pleadings that "the ... certificate of incorporation does not afford to ... the holder of the Series B Preferred stock,

a right to vote upon the proposed ... merger as a separate class").

11. *Dana Corp. v. LTV Corp.*, 668 A.2d 752, 755 (Del.Ch.1995).

12. 1978 WL 2506 *8 (Del.Ch. July 6, 1978).

13. *VantagePoint*, C.A. 05AS00982, Def.'s Answering Br. Ex. A. at *3.

14. CCC § 2115(b).

clear than the statute's attempted exclusion of the laws of other jurisdictions.

Faced with the statute's clear exclusionary purpose, VantagePoint contends that section 2115's requirement that preferred stockholder vote as a separate class does not conflict with Delaware law, which permits the establishment of class voting rights. This interpretation of Delaware law is plainly wrong. Applying Delaware law to Examen's certificate of incorporation, the proposed merger must be authorized by a majority of all Examen stockholders voting together as a single class. Requiring that Examen's preferred stockholders vote as a separate class is inconsistent with this rule and in derogation of the rights of Examen's other stockholders. Simply put, in determining the vote required to authorize the merger, this court cannot enforce both Delaware and California law. Therefore, the issue the court faces is clearly one of choice of law, and the court need not determine the constitutionality of section 2115.

## C. *Internal Affairs Doctrine*

■ Since the proposed stockholder vote implicates the relationship between a corporation and its stockholders, the court analyzes Examen's motion pursuant to the internal affairs doctrine. As the United States Supreme Court has said: "[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders." [15] "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs." [16] "[U]nder the commerce clause a state 'has no interest in regulating the internal affairs of foreign corporations.' " [17] "Thus, . . . application of the internal affairs doctrine is mandated by constitutional principles, except in 'the rarest situations.' " [18]

■ The Delaware Supreme Court defines "internal corporate affairs" as "those matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." [19] Delaware courts have consistently followed *McDermott,* applying the internal affairs doctrine in disputes over the rights of stockholders.[20] More

**15.** *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).

**16.** *Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); *see also McDermott, Inc. v. Lewis,* 531 A.2d 206, 215 (Del.1987) ("The internal affairs doctrine requires that the law of the state of incorporation should determine issues relating to internal corporate affairs."); *Palmer,* 1978 WL 2506, at *9 ("Delaware precedent also makes it clear that the internal affairs of a corporation are to be governed by the laws of the state of incorporation.").

**17.** *McDermott,* 531 A.2d at 217 (citing *Edgar,* 457 U.S. at 645–46, 102 S.Ct. 2629).

**18.** *Id.* at 217 (citing *CTS Corp.,* 481 U.S. at 90, 107 S.Ct. 1637).

**19.** *Id.* at 215 (citing *Edgar,* 457 U.S. at 645, 102 S.Ct. 2629).

**20.** *See, e.g., Draper v. Gardner Defined Plan Trust,* 625 A.2d 859, 867 n. 10 (Del.1993) ("When this Court considered [the internal affairs doctrine] issue six years ago in *McDermott,* it concluded that 'the umbilical tie of the foreign corporation to the state of its charter is still religiously regarded as conclusive in determining the law to be applied . . . in intracorporate disputes.' ") (quoting *McDermott,* 531 A.2d at 215–16); *Sternberg v. O'Neil,* 550 A.2d 1105, 1125 (Del.1988) ("Clearly, Delaware has constitutional authority to exercise jurisdiction in double derivative actions involving domestic corporations which owe their very existence and attributes to Delaware law. The internal affairs doctrine requires nothing less.") (citing *McDermott,* 531 A.2d at 216–17); *In re Oracle Corp.*

specifically, this court has recently held that section 2115 does not apply to voting rights of a Delaware corporation.[21]

■ This case is governed by the internal affairs doctrine. At issue here is a contested stockholder vote concerning a merger. This type of vote clearly falls within the parameters set by *McDermott.* A merger vote by stockholders plainly concerns the relationship between the corporation and the stockholders. Therefore, as a Delaware court, this court must apply Delaware law.

■ As the United States Supreme Court stated in *CTS Corp.,* "a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation."[22] As this court has previously determined, those rarest situations are ones in which "the law of the state of incorporation is inconsistent with a national policy on foreign or interstate commerce."[23] There is nothing rare about the situation presented to this court by VantagePoint. Neither the vote on the proposed merger between Examen and Reed

Elsevier, nor the merger itself, implicates any national policy on foreign or interstate commerce. VantagePoint makes no argument or suggestion to the contrary. Guided by the United States Supreme Court's teachings in *CTS Corp.,* this court concludes that Examen's internal affairs are governed by the law of the state of its incorporation, namely Delaware. ·

Instead of accepting the holdings of *Edgar* and *CTS Corp.,* VantagePoint asks the court to look to another United States Supreme Court case, *Allstate Ins. Co. v. Hague.*[24] *Allstate* is, however, clearly inapposite. *Allstate* concerns an uninsured motorist lawsuit filed by a resident of one state, whose husband was killed traveling as a motorcycle passenger in another state.[25] Nowhere in *Allstate* does the Court address the internal affairs of a corporation, which is the issue here. Furthermore, *Allstate* was decided in 1981, before both *Edgar* and *CTS Corp.* firmly established the internal affairs doctrine. Given the more recent, and apposite, United States Supreme Court cases, this court declines to apply the language of *Allstate* to the facts presented.[26]

---

*Derivative Litig.,* 808 A.2d 1206, 1213 n. 21 (Del.Ch.2002) ("Under the internal affairs doctrine, the law of the state of incorporation (Delaware) would apply to matter of substantive law raised in the Delaware and California state court proceedings.") (quoting *Draper,* 625 A.2d at 864–65).

**21.** *See Tera Sys., Inc. v. Mentor Graphics Corp.,* 2003 WL 23341841, at *1 (Del.Ch. Aug.22, 2003) ("California law, including but not limited to Section 2115 of the California Corporations Code, does not govern or apply to any determination of the voting rights of the holders of Tera's Series A Preferred Stock in regard to the merger between Tera and TSI.").

**22.** *CTS Corp.,* 481 U.S. at 90, 107 S.Ct. 1637.

**23.** *Kostolany v. Davis,* 1995 WL 662683, at *2 (Del.Ch. Nov.7, 1995) (citing *McDermott,* 531 A.2d at 217).

**24.** 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

**25.** *Id.* at 305, 101 S.Ct. 633.

**26.** VantagePoint argues that this court should look to the following language from *Allstate*: "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 312–13, 101 S.Ct. 633. VantagePoint neglects, however, to include the sentence immediately following, which states that the "[a]pplication of this principle *to the facts of this case* persuades us that the Minnesota

This decision is also not inconsistent with California law. As California courts acknowledge, "[t]he internal affairs doctrine is a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs ... because otherwise a corporation could be faced with conflicting demands."[27] Additionally, the California Supreme Court acknowledges that disputes about corporate voting rights are governed by the law of the state of incorporation.[28] Delaware is Examen's state of incorporation and thus Delaware's law should apply to Examen's corporate voting rights.

In an effort to rebut the more recent cases that support the internal affairs doctrine, VantagePoint relies on *Provident Gold Mining*, a 1916 California Supreme Court case which held that stockholders of an Arizona corporation were individually liable for the debts and liabilities of the corporation pursuant to the law of California.[29] VantagePoint is unable to cite any more recent California Supreme Court case[30] or one that would expand *Provident Gold Mining's* holding to encompass corporate voting rights of stockholders. The absence of recent case law is telling, especially given the landmark *Edgar* decision in 1982. Moreover, VantagePoint cannot

cite one California Supreme Court case that has analyzed section 2115 or some other similar statute purporting to regulate the internal affairs of a Delaware corporation. As the Delaware Supreme Court observed in *Draper* "[t]he California cases do not reveal a clear doctrine ... that California will, in a case like the instant case, ignore the internal affairs doctrine and apply California law, not Delaware law."[31]

After a review of the relevant case law, this court concludes that the internal affairs doctrine controls the stockholder vote at issue. Since Examen is a Delaware corporation, Delaware law will apply to its internal affairs and all stockholders will be permitted to vote on the proposed merger as a single class.

## V.

For the foregoing reasons, the motion for judgment on the pleadings is GRANTED. IT IS SO ORDERED.

---

Supreme Court's choice of its own law did not offend the Federal Constitution." *Id.* at 313, 101 S.Ct. 633 (emphasis added). Undoubtedly, there is an enormous difference between an insurance policy and a certificate of incorporation. Therefore, the restriction of *Allstate's* holding to the facts prevents this court from expanding the holding to the internal affairs of a corporation.

**27.** *Havlicek v. Coast–to–Coast Analytical Serv., Inc.,* 39 Cal.App.4th 1844, 1854, 46 Cal. Rptr.2d 696 (Cal.Ct.App.1995) (quoting *Edgar,* 457 U.S. at 645, 102 S.Ct. 2629).

**28.** *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d

1148, 1155 (1992) (citing *McDermott,* 531 A.2d at 214–16, with approval).

**29.** *Provident Gold Mining Co. v. Haynes,* 173 Cal. 44, 159 P. 155, 157 (1916).

**30.** In its answering brief, VantagePoint states that *Wilson v. Louisiana–Pacific Res., Inc.,* 138 Cal.App.3d 216, 187 Cal.Rptr. 852 (1982), a much more recent case that appears to support VantagePoint's position, was a California Supreme Court case. Def.'s Answering Br. at 17. This is not correct. *Wilson* was decided by the California Court of Appeal.

**31.** *Draper,* 625 A.2d at 867 n. 10.